**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 97-21042

_____


ART ENSLEY,

                                        Plaintiff-Appellee-
                                        Cross-Appellant,

                    VERSUS

            CODY RESOURCES, INC., ET AL

                                             Defendants,

         CODY RESOURCES INC; CODY ENERGY, INC.,

                                        Defendants-Appellants-
                                        Cross-Appellees.


_____

Appeals from the United States District Court
for the Southern District of Texas
_____

April 13, 1999

Before JONES, SMITH, and EMILIO M. GARZA, Circuit Judges.

JERRY E. SMITH, Circuit Judge:


    Cody Resources, Inc., and Cody Energy, Inc. (collectively, "Cody"), appeal a quantum meruit judgment.  Art Ensley cross-appeals, seeking prejudgment interest and to reverse summary judgment entered against him on his fraud claim; in the alternative, he requests a new trial.  We affirm.

Working as an independent broker and consultant for petroleum-related businesses, Ensley provided services to Cody by bringing mineral interests to Cody's attention, for which he typically was paid a commission or finder's fee; he also performed marketing, price analysis, title services, and various due diligence tasks at a periodic rate. In their first few major transactions, the parties reduced compensation agreements to writing.

In May 1992, Ensley and his wife, each taking a fifty percent share, incorporated Ensley Properties, Inc. ("EPI"). Thereafter, Ensley billed Cody for his due diligence and other services through, and had Cody remit payments to, EPI.[1]

While working on Cody's attempt to acquire the Louisiana Natural Gas pipeline in the spring of 1992, Ensley learned that Ultramar Oil and Gas, Inc. ("Ultramar"), owned certain properties likely to be of interest to Cody. Upon contacting Ultramar, Ensley discovered that the entire corporation might be for sale and brought this to Cody's attention. Rick Westerberg, Cody's chief financial officer, testified that he informed Ensley during their initial conversation regarding Ultramar that he already knew it was for sale; Cody's president, Bob Kubik, apparently already was

---

[1] For example, the written commission agreement for the Winding Stairwell acquisition, a deal the parties initiated in March 1992, was addressed to EPI rather than Ensley individually.

aware, too.  Cody retained Ensley as a consultant to facilitate contacts with Ultramar and perform due diligence services, paying Ensley at a periodic rate.

The parties dispute whether they entered into a commission agreement for the Ultramar deal.[2]  Westerberg testified that he and Ensley discussed the possibility of a commission but that he informed Ensley it would not be possible because of Cody's foreknowledge.  Westerberg told Ensley that he might be able to work for Cody if they successfully completed the arrangement. Ensley testified that he convinced Ultramar to negotiate with Cody and that he believed they had reached an oral commission agreement.

When the deal closed, Westerberg asked Ensley to work for Cody.  According to Ensley, as part of the compensation package, and in lieu of a commission on the Ultramar transaction, Westerberg promised Ensley that he would share in a stock distribution to Cody's management.  Although a stock plan was not yet in place, Westerberg showed Ensley an Ernst & Young report naming him a participant in the proposed plan.  Westerberg further encouraged Ensley by saying that stock in a growing company would be more valuable in the long run than would a one-time commission.  Ensley accepted employment.

Six months later, Cody's directors adopted the stock management plan, but without Ensley's participation, and eliminated

---

[2] This dispute forms the basis of the breach of contract and quantum meruit claims.

3

Ensley's position.  Ensley claims that, while indicating Cody was pleased with Ensley's performance, Kubik "abruptly informed" him that Cody was closing its Houston office and eliminating his job. According to Cody, Ensley demanded a large salary increase to leave Houston; Cody terminated him for the salary demand and because Ensley needed supervision that was not available.

When terminated, Ensley asked about the stock promise.  Kubik allegedly replied, "What promises?"[3]  Kubik testified that he first heard of a commission promise for the Ultramar deal in a letter from Ensley's attorney two months after Ensley's termination.

## II.

Ensley sued Cody for damages incurred as the result of the Ultramar transaction and the reneged stock promise, alleging, *inter alia*, breach of contract, quantum meruit, and fraudulent inducement.  At the close of Ensley's case-in-chief, Cody moved for judgment as a matter of law (j.m.l.) on all three counts, claiming that Ensley had failed to establish a *prima facie* case on the fraud count and  lacked standing to recover damages in his individual capacity for services rendered by EPI during the Ultramar transaction.  The  court entered j.m.l. on the fraud count and deferred a ruling on the other two.

---

[3]  The alleged unfulfilled stock promise is the gravamen of Ensley's fraudulent inducement claim.

Those two counts went to the jury, which found against Ensley on the contract claim but awarded him $486,321 in quantum meruit. The court entered judgment in that amount, plus prejudgment and postjudgment interest.

Cody again moved for j.m.l. on the standing issue. Finding that the quantum meruit claim belonged to EPI, the court granted the motion and entered an amended take-nothing judgment and provisionally found (in case it were reversed on the underlying claim) that Ensley was not entitled to prejudgment interest.

On reconsideration, the court held that Cody's objection was not "standing" in its jurisdictional sense and *sua sponte* determined that the objection was a real-party-in-interest question that Cody had waived by not raising it before trial. The court entered a second amended judgment awarding Ensley the quantum meruit damages and postjudgment interest.

## III.

Cody argues that the court erred in denying its motion for j.m.l. on the quantum meruit claim.[4] Cody presents a simple

---

[4] We review the grant or denial of j.m.l. *de novo*. *See Freeman v. County of Bexar*, 142 F.3d 848, 850 (5th Cir. 1998); *Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1042 (5th Cir. 1998). "[W]e apply the same standard as the district court, considering all evidence with all reasonable inferences in the light most favorable to the non-moving party." *Id.* (quotations and citation omitted). But neither party disputes the narrow issue of whether sufficient evidence supports the verdict that Ensley performed services for Cody for which he was not compensated, entitling him to damages in quantum meruit. Rather, they dispute whether he performed those services through EPI and whether he can collect for damages that belong to EPI.

5

argument:  Because Ensley performed all the work on the Ultramar deal through EPI, EPI incurred the damages, and Ensley, as an EPI shareholder, lacks standing to pursue those damages individually.[5] Cody styles the argument as jurisdictional, hence excusing the fact that it delayed making the argument until after Ensley's case-in-chief.  Ensley responds that the record provides sufficient evidence of his individual efforts to support the jury's verdict and, as the objection is not to standing in its jurisdictional sense, Cody waived it by failing to raise it before trial. Assuming *arguendo* that the cause of action belongs to EPI,[6] we agree with the district court that the objection is waived and affirm the judgment.

### A.

"The standing doctrine has its origins in 'both constitutional imitations on federal court jurisdiction and prudential limitations on its exercise.'" *O'Hair v. White*, 675 F.2d 680, 685 (5th Cir. 1982) (en banc) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)).  The irreducible minimum constitutional standing

---

[5] The standing issue presents a question of law that we review *de novo*. *Douglas v. DynMcDermott Petroleum Operations Co.*, 144 F.3d 364, 369 (5th Cir. 1998), *cert. denied*, 119 S. Ct. 798 (1999).

[6] The jury decided for Ensley on the quantum meruit claim when the complaint and arguments focused on Ensley but made no distinction between EPI and Ensley.  It appears that Cody did attempt to distinguish between the two in some of its questioning but not in arguments or jury instructions.  Without a timely objection to Ensley's pursuing the claim, we affirm the verdict.

requirement to invoke a federal court's article III jurisdiction is (1) injury-in-fact (2) fairly traceable to the defendant's actions and (3) likely to be redressed by a favorable decision. *See Raines v. Byrd*, 521 U.S. 811, 818 (1997); *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982). The prudential limitations on justiciability include that "a plaintiff generally may not rest his claim to relief on the legal rights of third parties even if he has alleged injury sufficient to satisfy article III." *O'Hair*, 675 F.2d at 687.


B.

In asserting that the court erred in failing to grant j.m.l., Cody relies on Texas caselaw holding that a shareholder lacks standing to pursue the corporation's cause of action.[7] But Cody does not actually contest Ensley's injury in fact and neglects to address the dispositive distinction between constitutional and prudential limitations on standing.


1.

Ensley suffered a concrete injury sufficient to meet the constitutional justiciability requirement. Although Cody disputes that it has conceded Ensley's injury in fact, it has done so, in

---

[7] *See, e.g., Wingate v. Hajdik*, 795 S.W.2d 717, 719 (Tex. 1990).

7

essence. Its incantation that a shareholder may not sue for the corporation's injury does not attack Ensley's injury in fact, and the cited casesSSstate and federalSSdo not suggest that the limitation on shareholder suits is based on a lack of injury. Indeed, Ensley and his wife face a significant diminution in the value of their sharesSSEPI's only sharesSSwithout the quantum meruit damages; an award of over $400,000 would redress that injury.[8]

## 2.

The real issue is not whether there is jurisdiction, but the prudential limitation on our *exercise* of that jurisdiction over a *jus tertii*/third party plaintiff. Although the cases Cody cites refer to lack of standing as a shareholder, not one holds that the inquiry is jurisdictional or that the objection may not be waived. Indeed, Congress may alter prudential aspects of standing.[9] Cody's standing objection is a prudential limitation that constitutes an objection to the real party in interest under FED. R. CIV.

---

[8] *See Lewis v. Knutson*, 699 F.2d 230, 236 (5th Cir. 1983) (noting that "[t]he minimal requirements of Article III, or 'pure' standing, affects significantly fewer cases than the prudential limitation because if plaintiff did not have the minimal personal involvement and adverseness which Article III requires, he would not be engaging in the costly pursuit of litigation") (quotation omitted); *see also Whelan v. Abell*, 953 F.2d 663, 672 (D.C. Cir. 1992) (noting that injury to shareholders of closely held corporation does not present an article III problem).

[9] *See Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 100 (1979) ("Congress may, by legislation, expand standing to the full extent permitted by Art. III, thus permitting litigation by one 'who otherwise would be barred by prudential standing rules.'") (quoting *Warth*, 422 U.S. at 501).

P. 17(a).[10]  Because the Federal Rules of Civil Procedure address this prudential standing requirement, they govern our inquiry.

Although precedent indicates that a shareholder lacks "standing" under this prudential limitation, in our cases addressing a shareholder's standing, the defendant objected before trial.[11]  Here, Cody did not object until after Ensley's case-in-chief; this is too late, and hence the objection is waived.[12]

Ensley relies on *Whelan*, which provides a compelling analysis.[13]  On the first day of trial, the defendants claimed that the plaintiffs could not sue for the lost value of their investments because the corporation in which they held shares was the real party in interest; the district court agreed.  *See Whelan*, 953 F.3d at 671.  The court of appeals reversed, holding that the district court had abused its discretion in granting the motion so late in the proceedings.  *See id*.  It also rejected the defendants'

---

[10] *See*, *e.g.*, *Thomas v. N.A. Chase Manhattan Bank*, 994 F.2d 236, 247 (5th Cir. 1993) (addressing, in addition to article III standing, the "capacity" standing requirement of whether plaintiff is real party in interest under FED. R. CIV. P. 17(a)); *Lewis*, 699 F.2d at 236-38 (discussing FED. R. CIV. P. 23.1's shareholder derivative "standing requirements" as prudential aspect of standing); *Gregory v. Mitchell*, 634 F.2d 199, 202 (5th Cir. Jan. 1981) (addressing FED. R. CIV. P. 17 and holding that shareholder lacks standing to bring suit for corporation's injury).

[11] *See*, *e.g.*, *Cottingham v. General Motors Corp.*, 119 F.3d 373, 378-79 (5th Cir. 1997); *Crocker v. FDIC*, 826 F.2d 347, 349 (5th Cir. 1987); *United States v. Palmer*, 578 F.2d 144, 145-46 (5th Cir. 1978); *see also supra* note 10.

[12] *See International Meat Traders, Inc. v. H & M Food Sys.*, 70 F.3d 836, 840 (5th Cir. 1995); *Gogolin & Stelter v. Karn's Auto Imports*, 886 F.2d 100, 102 (5th Cir. 1989) (holding objection raised at end of case-in-chief too late).

[13] Tellingly, Cody ignores this case in its reply brief.

attempt to recharacterize the issue on appeal as standing to avoid the timeliness problem. The court held that the cases on shareholders' lacking standing do not address injury in fact; indeed, in a closely held corporation the injury is obvious. *See id*. at 672. The real objection, rather, was to the real party in interest under FED. R. CIV. P. 17(a); that objection was waived. *See id*. Because this well-reasoned analysis does not conflict with, but compliments, our jurisprudence, we endorse it, deem the standing argument waived, and affirm the denial of j.m.l.

3.

Cody attempts to avoid this result by arguing that its standing/real party in interest objection was timely. Because the pleadings and arguments unambiguously stated that Ensley was suing to recover damages allegedly suffered by him, individually, a rule 17 motion would have been sanctionable under FED. R. CIV. P. 11 if made before Ensley's case established that the injury was to the corporation.

The district court was appropriately skeptical of this argument. Cody's cross-examination of Ensley suggests it was attempting to distinguish Ensley and EPI. Furthermore, if, as Cody contends, the facts so pellucidly indicate that the cause of action belongs to EPI, then it should have anticipated Ensley's case and made the motion. Had it failed, it would have bound Ensley to only

individual damages.  The idea that an earlier motion would have been sanctionable is far-fetched.

Cody offers the red-herring that Ensley waived any defense based on rule 17 by not raising it in the district court.  Ensley presents no such defense.  Cody attacks the verdict and judgment on the standing issue; the district court merely clarified that the objection properly was a waivable rule 17 objection and rejected the standing challenge.  Ensley may defend that determination on any groundSSespecially one addressed by the district court.

Cody also contends that rule 17 applies only to honest mistakes of mis-naming plaintiffs in difficult cases, and here Ensley should have known to whom the action belonged.  But we are not applying rule 17.  Finding the objection to be a waivable rule 17 objection rather than jurisdictional does not mean we apply rule 17 to generate a cause of action.

Finally, Cody argues that Ensley should be judicially estopped from claiming an entitlement to EPI's damages because he expressly disavowed any intent to recover those damages.  Again, it is Cody's objection that is tardy; without a timely argument to the contrary, we affirm the verdict.

Furthermore, judicial estoppel generally requires reliance by the district court.  *See*, *e.g.*, *Afram Carriers, Inc. v. Moeykens*, 145 F.3d 298, 304 (5th Cir. 1998), *cert. denied*, 119 S. Ct. 1031 (1999).  Here, the court found that the damages belonged to EPI and

11

yet entered judgment for Ensley.  It did not rely on Ensley's argument that the damages belonged to him individually.

IV.

On cross-appeal, Ensley argues that (1) his case merits prejudgment interest, (2) the district court erred by granting j.m.l. on the fraudulent inducement claim, and (3) in the alternative, he deserves a new trial because the court abused its discretion in (a) denying Ensley's impeachment evidence that Cody is suing Westerberg, its star witness *in absentia*, and (b) admitting an unsigned draft contract into evidence without foundation.  We find no reversible error.

A.

Ensley asserts error in the denial of prejudgment interest.[14] Prejudgment interest should be awarded from the date of the injury or loss "where damages are established as of a definite time and the amount thereof is definitely determinable." *City of Ingleside v. Stewart*, 554 S.W.2d 939, 946-47 (Tex. Civ. App.SSCorpus Christi 1977, writ ref'd n.r.e.).  Neither party disputes that the damages

---

[14] Neither party mentions, and no Fifth Circuit case provides us with, the standard of review.  Texas appellate courts review a denial of prejudgment interest for abuse of discretion.  *See Castle v. Harris*, 960 S.W.2d 140, 142 (Tex. App.SSCorpus Christi 1997, no writ); *Marsh v. Marsh*, 949 S.W.2d 734, 744 (Tex. App.SSHouston [14th Dist.] 1997, no writ) (applying abuse of discretion to grant of interest with limited deference to trial court's application of law to facts).  This comports with our usual standard for reviewing interest awards, and we apply it here.

12

were established at the definite time of the transaction's completion; the parties disagree as to whether the amount was definitely determinable at that time.

Ensley correctly urges that "definitely determinable" requires that the measure, not an amount, of damages "is fixed by conditions existing at the time the claim arose." *See id.* at 947.[15] Although Ensley provides adequate factual distinctions for the cases on which the district court relied, he fails to establish a known measure for his damages. That a commission typically is determined by a percentage of the transaction price leaves open what percentage to apply here. Even Ensley's expert presented only a range, and the jury's damages fall well below the bottom of that range. Nor do the parties have a history of always following a certain percentage commission, determinable by presenting evidence. The jury had to decide what quantum of damages to award, without the guidance of a "definitely determinable" formula. The court did not abuse its discretion.

B.

Ensley avers that the court erred in granting j.m.l. on his fraudulent inducement count. We review *de novo* a grant of j.m.l.,

---

[15] *See also Great Am. Ins. Co. v. North Austin Mun. Util. Dist. No. 1*, 950 S.W.2d 371, 373 (Tex. 1997) (per curiam) (holding damages "ascertainable" even though extrinsic evidence may be needed to quantify the damages if the contract "fixes a measure by which the sum payable can be ascertained with reasonable certainty in light of the attending circumstances").

viewing all reasonable inferences in favor of Ensley. *See supra note* 4.

At issue is whether Ensley established, as part of his *prima facie* case, that Cody made the stock and commission promises with the intent of never fulfilling them.[16] A denial that the promise ever was made and a failure to perform are factors demonstrating an intent not to perform. *See id.; Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 435 (Tex. 1986). But these alone do not suffice; some additional "slight circumstantial evidence" of fraud is required.[17] The question is whether the instant case exhibits that additional circumstantial evidence sufficient to survive j.m.l.[18]

---

[16] The elements of Ensley's fraud action are (1) that a material representation was made; (2) that it was false; (3) that the speaker knew it was false when made; (4) that it was made with the intent of inducing reliance; (5) that the party relied on it; (6) damages; and, in the case of a promise to act in the future, (7) that the promisor had no intention of performing when he made the promise. *See T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 222 (Tex. 1992).

[17] *See Spoljaric*, 708 S.W.2d at 435; *Hoechst Celanese Corp. v. Arthur Bros., Inc.*, 882 S.W.2d 917, 925 (Tex. App.SSCorpus Christi 1994, writ denied).

[18] Ensley asserts that a failure to perform and denial of the promise alone suffice to survive j.m.l. Although there is *dicta* to that effect, the Texas Supreme Court's most recent pronouncement on the subject refutes this contention.

In *T.O. Stanley Boot Co.*, the defendant both failed to perform a promise to extend credit and denied the promise; in addition, there was a memorandum indicating that the bank continued investigating sources of finance in lieu of the credit, which the plaintiff asserted demonstrated an intent never to perform. *See T.O. Stanley Boot Co.*, 847 S.W.2d at 222. The court found the evidence too weak to support the verdict. *See id*. *See also*, *e.g.*, *Spoljaric*, 708 S.W.2d at 435 (finding several inquiries into pledged bonus plan, employer's refusal to enter written employment contract where it did so with others, and insistence on written bonus plan despite oral employment agreement); *Stanfield v. O'Boyle*, 462 S.W.2d 270, 272 (Tex. 1971) (pointing to testimony relaying conversation only a couple of days after promise made where promisor indicated he would not perform); *Hoechst Celanese Corp.*, 882 S.W.2d at 925 (finding disdain for

(continued...)

14

Ensley relies on the additional evidence that Cody (1) admitted that someone in Ensley's position would expect payment,(2) fired Ensley when he inquired about the Stock options, and (3) did not immediately inform Ensley that he had been terminated by the board of directors.[19] These factors do not defeat j.m.l. Although the admission that someone in Ensley's position would expect payment, in the form of a commission or stock, supports the existence of a promise, it does not support the intent never to perform.

The timing argument also fails. The board's minutes show that Cody terminated Ensley well before he inquired about the stock

---

[18](...continued)
contractee, refusals to meet with its officials, timing of decision not to renew the contract, and recantation of criticisms during testimony buttressed case for intent not to perform); *see also Beijing Metals & Minerals Import/Export Corp. v. American Bus. Cent., Inc.*, 993 F.2d 1178, 1186 (5th Cir. 1993) (applying Texas law to find sufficient evidence of fraud where, in addition to denial and failure, the defendant explicitly refused to reduce agreement to writing and almost immediately repudiated the promise); *cf. T.O. Stanley Boot Co.*, 847 S.W.2d at 222 (finding no evidence of fraud despite denial, failure, and memorandum that could imply no intent to perform); *Barbouti v. Barchilde Trust*, 866 S.W.2d 288, 295 (Tex. App.SSHouston 1993, writ denied) (finding no evidence of fraud where denial, failure, and related denials raised questions as to intent to perform). *But see Stone v. Williams*, 358 S.W.2d 151, 155 (Tex. Civ. App.SSHouston 1962, writ ref'd n.r.e.) (finding sufficient evidence of fraud from only failure and denial).

[19] Ensley also points to Cody's pleadings alleging fraudulent conduct by Westerberg that he alleges should have been admitted to show Cody's knowledge that Westerberg may have lied to Ensley and to establish the intent to commit this fraud. The record reflects that Ensley did not attempt to introduce this evidence to substantiate the fraud count, and Ensley has provided no record citations to show otherwise; the first related discussion appears after the close of his case-in-chief and focuses solely on its impeachment value. Nonetheless, the court did not abuse its discretion in excluding the evidence under FED. R. EVID. 403. It had ample discretion to determine that the pleadings, which were not redacted but for allegations of sexual harassment, contained too much extraneous information such that unfair prejudice, jury confusion, and delay would substantially outweigh their probative value.

15

options.  We fail to see how the delay in informing him that he had been terminated supports his contention that Cody never intended to perform on the stock promise.  Absent any additional evidence supporting that element, the court did not err in entering j.m.l.

C.

In the alternative, Ensley seeks a new trial on his quantum meruit and/or oral contract claims, pointing to alleged evidentiary errors.  Because we affirm the quantum meruit judgment, we need not reach these arguments.

The judgment is AFFIRMED.