362 F.3d 603
 In re RODEO CANON DEVELOPMENT CORPORATION, Debtor.
William Warnick; Ann Warnick, individually and as Trustees of the William and Ann Warnick Family Living Trust; Alan Warnick; Jill Warnick, Appellants-Cross-Appellees,
v.
Fred Yassian; Beverly Rodeo Development Corporation, Appellees-Cross-Appellants.
 No. 02-56999.
 No. 02-57203.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted December 2, 2003.
 Filed March 30, 2004.
 
 1
 COPYRIGHT MATERIAL OMITTED Louis J. Khoury, Law Offices of Louis J. Khoury, Los Angeles, CA, for the appellants/cross-appellees.
 
 
 2
 David R. Weinstein, Weinstein, Eisen, Weiss & Rothschild LLP, Los Angeles, CA, for the appellees/cross-appellants.
 
 
 3
 Appeal from the Ninth Circuit Bankruptcy Appellate Panel Marlar, Montali and Perris, Judges, Presiding. BAP No. CC-01-01428 MaMoP.
 
 
 4
 Before: KOZINSKI and NOONAN, Circuit Judges, and SCHWARZER,* Senior District Judge.
 
 SCHWARZER, Senior District Judge:
 
 5
 This case concerns the proper disposition in bankruptcy court of proceeds from the sale of property, the ownership of which was subject to dispute and in litigation in a pending adversary proceeding. While the debtor held legal title to the property, its partner claimed that the property was owned by the partnership and hence not the estate. The outcome of the ownership dispute, yet unresolved, would determine whether the indebtedness secured by liens on the property would be satisfied out of the proceeds from the sale or out of the debtor's assets.
 
 
 6
 The Bankruptcy Appellate Panel ("BAP") held that, since the sale had been consummated and was not subject to attack, the nonbankrupt partner was entitled to disgorgement of the sale proceeds sufficient to protect the partnership's claimed ownership interest in the property and his potential interest in the partnership. We have jurisdiction pursuant to 28 U.S.C. § 158(d). We affirm, but for reasons other than those of the BAP.
 
 FACTUAL AND PROCEDURAL BACKGROUND
 
 7
 The debtor is Rodeo Canon Development Corporation ("Rodeo"), which holds record title to a commercial property at 9615 Brighton Way in Beverly Hills, California ("the Property"). In 1990, it formed the 9615 Brighton Way Partnership ("Brighton") with Beverly Rodeo Development Corporation, whose president is Fred Yassian (together "Beverly"). Each partner held a 50% interest. While Rodeo held legal title to the Property, Beverly claimed that, because partnership funds were used to purchase it, the Brighton partnership is the equitable owner of the Property and Beverly has a 50% interest. Adversary proceedings remain pending in the bankruptcy court to resolve this ownership dispute.
 
 
 8
 Beginning in 1993, members of the Warnick family and a family trust (together "the Warnicks") extended a series of loans aggregating $3,200,000 to Rodeo; the loans were secured by deeds of trust on the Property. In July 1999, the Warnicks sought to foreclose their trust deeds, prompting Rodeo's bankruptcy filing. Beverly and the Chapter 7 Trustee disputed the validity of two of the trust deeds and a portion of a third. Beverly contended that these obligations were incurred without the consent of the partnership and hence could not be enforced against the Property. That issue also remains pending in the adversary proceeding.
 
 
 9
 In December 2000, after conversion of the bankruptcy to Chapter 7, the Trustee moved pursuant to 11 U.S.C. § 363(b) and (f) for authorization to sell the Property free and clear of liens, agreeing that the Warnicks' lien interests as well as Beverly's interest in the property would attach to the sale proceeds pending resolution of the disputes. Beverly objected on the ground that the Property was not "property of the estate" as required by 11 U.S.C. § 363(b)(1).
 
 
 10
 To settle the dispute over the enforceability of the trust deeds and clear the way for a sale, the Trustee and the Warnicks entered into a settlement agreement on January 25, 2001. Under the agreement, the Property would be sold for $10,500,000, the Warnicks would accept $3,200,000 in settlement of their secured claims and convert a portion of their secured claim to unsecured, and other creditors' secured liens totaling $4,302,000 would be paid; the disbursements would leave the estate with $2,998,000 in sale proceeds. Following a hearing, the bankruptcy court approved the settlement agreement and entered its order for the sale "free and clear" of liens and claims.
 
 
 11
 Beverly moved for reconsideration, representing that it did not object to the sale "free and clear" of liens and claims to the extent that it authorized payments of costs and liens not in dispute, so long as the payments would not implicitly resolve or render moot the litigation in which it claimed that the partnership owned the Property and that the challenged liens could not be enforced against the Property. It sought an order directing the Trustee to withhold payments to the Warnicks in excess of $1,050,000 pending resolution of the adversary proceedings over ownership and the enforceability of the liens. The court denied the motion and the appeal to the BAP followed.
 
 
 12
 The BAP affirmed the order insofar as it approved the settlement. It reversed the sale order insofar as it provided for the disbursement of more than $1,050,000 of the sale proceeds to the Warnicks, holding that it was error to permit the Trustee to sell "free and clear" of any other entity's interest so long as such interest remained in dispute without prohibiting or conditioning such sale "as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e). The Warnicks argued that the settlement agreement provided adequate protection because as a 50% partner Beverly was, at most, entitled to half of the $5,148,000 available for distribution to the partners after payment of other creditors' secured liens, and the $2,998,000 in net proceeds remaining in the estate would suffice to satisfy that entitlement. The BAP disagreed, however, pointing out that because partnership property rights and interpartner adjustments remained unresolved, "there was no guarantee that Beverly's interest would be only 50% of the sale proceeds." The bankruptcy court had therefore erred in authorizing the Trustee to distribute the entire amount of $3,200,000 before the ownership issue had been resolved. The BAP instructed the bankruptcy court to order the Warnicks to disgorge $2,150,000 — the disputed amount of sale proceeds — to the Trustee pending conclusion of the adversary proceedings.
 
 DISCUSSION
 I. STANDARD OF REVIEW
 
 13
 We review an order of the BAP de novo. Carrillo v. Su (In re Su), 290 F.3d 1140, 1142 (9th Cir.2002). "We independently review a bankruptcy court's ruling on appeal from the BAP," reviewing the bankruptcy court's "conclusions of law de novo and its factual findings for clear error." Id. We review the bankruptcy court's approval of a proposed compromise for an abuse of discretion. Debbie Reynolds Hotel & Casino, Inc. v. Calstar Corp. (In re Debbie Reynolds Hotel & Casino, Inc.), 255 F.3d 1061, 1065 (9th Cir.2001).
 
 
 14
 II. BEVERLY'S RIGHT TO MAINTAIN CLAIMS ON BEHALF OF THE PARTNERSHIP
 
 
 15
 The Warnicks contend that Beverly (and Yassian) are not entitled to maintain this action because they are not real parties in interest. The pivotal issue in the litigation is whether the Property was property of the bankruptcy estate. The Warnicks argue that because the dispute is over the partnership's claim to ownership of the Property, only the partnership is the proper party to assert it.
 
 
 16
 We do not need to resolve this issue because the Warnicks, having failed to raise the real party in interest objection in the bankruptcy court, have waived it. Federal Rule of Bankruptcy Procedure 7017 incorporates Federal Rule of Civil Procedure 17(a), which mandates that "[e]very action shall be prosecuted in the name of the real party in interest." We have held that an objection to a party on real party in interest grounds is waived if not raised in a timely manner. See United States ex rel. Reed v. Callahan, 884 F.2d 1180, 1183 n. 4 (9th Cir.1989) (refusing to address a real party in interest defense raised for the first time on appeal). Other circuits have taken the same position. See Ensley v. Cody Res., Inc., 171 F.3d 315, 319-20 (5th Cir.1999) (Rule 17(a) objection waived when not raised until case reached court of appeals); Richardson v. Edwards, 127 F.3d 97, 99 (D.C.Cir.1997) (objection waived when not raised until trial underway); Gogolin & Stelter v. Karn's Auto Imps., Inc., 886 F.2d 100, 102-03 (5th Cir.1989) (defense waived when made at the close of the plaintiff's evidence); Hefley v. Jones, 687 F.2d 1383, 1386-88 (10th Cir.1982) (defense waived when made sixteen days before trial); Chicago & Northwestern Transp. Co. v. Negus-Sweenie, Inc., 549 F.2d 47, 50 (8th Cir.1977) (defense waived when not raised during trial court proceedings).
 
 
 17
 The real party in interest objection is not founded on Article III standing principles, but is a prudential rule intended to ensure that the party bringing the action is the party entitled to make the claim. Whelan v. Abell, 953 F.2d 663, 672 (D.C.Cir.1992) ("Conceptually ... the problem [of stockholders' rights to bring an action alleging breach of a fiduciary duty owed to the corporation] is not an Article III one."); see also Ensley, 171 F.3d at 319 (holding that so long as the plaintiff satisfies constitutional standing requirements, the Rule 17(a) limitation is prudential rather than constitutional).
 
 
 18
 Rule 17(a) makes clear that the objection must be timely raised: Rule 17(a) ... provides that "no action shall be dismissed on [real-party-in-interest grounds] until a reasonable time has been allowed after objection for ratification of commencement of the action by ... the real party in interest...." This implies that the defense may not be raised at any time, for the real party must have the opportunity to step into the "unreal" party's shoes and should not be prejudiced by undue delay.
 
 
 19
 Whelan, 953 F.2d at 672 (citation omitted); see also Richardson v. Edwards, 127 F.3d 97, 99 (D.C.Cir.1997) (stating that the court "will not entertain [an objection under Rule 17(a)] because Richardson failed to raise it in the bankruptcy court. ... To wait until the case reaches the court of appeals is to waive the objection."). Accordingly, we reject the Warnicks' contention.
 
 III. THE DISTRIBUTION OF THE SALE PROCEEDS
 
 20
 The BAP held that while the sale, having been consummated, was not subject to attack, Beverly's claim to an ownership interest in the Property was entitled to protection. It looked to 11 U.S.C. § 363, which authorizes the trustee to sell "property of the estate." 11 U.S.C. § 363(b)(1). Section 363(f) permits the trustee to sell such property "free and clear of any interest in such property of an entity other than the estate" if certain conditions are met. The BAP, however, invoked § 363(e), which provides that "on request of an entity that has an interest in property... sold ... by the trustee, the court... shall prohibit or condition such ... sale ... as is necessary to provide adequate protection of such interest." It then concluded that the amount of the proceeds remaining in the estate after the disbursement of $3,200,000 to the Warnicks did not constitute adequate protection under the circumstances of the case.
 
 
 21
 We disagree with the BAP's analysis although we agree with its result. Section 363 authorizes the trustee to sell only property of the estate. Connolly v. Nuthatch Hill Assocs. (In re Manning), 831 F.2d 205, 207 (10th Cir.1987). Section 541(a)(1) defines property of the estate to include "all legal or equitable interests of the debtor in property." Although Rodeo was the record titleholder of the Property, Beverly claimed a beneficial interest in it. Beverly's claim relied on the contention that the Property was purchased with partnership funds, and that the partnership was therefore the equitable owner of the Property. If the partnership did own the Property, Beverly would have a partner's stake in it.
 
 
 22
 The bankruptcy court allowed the sale free and clear even though it declined to adjudicate the equitable ownership of the Property until after the sale. The court did state that Beverly failed to rebut California's presumption that the owner of legal title to property also owns the full beneficial title. See CAL. EVID. CODE § 662. And it purported to find the Property to be "property of [Rodeo's] estate." But that finding is irreconcilable with its decision to leave the ownership question open "for another day." A final decision that Beverly failed to overcome § 662's presumption would have settled the very question the court professed to leave open. Thus, we cannot find that the court finally resolved the ownership question in the face of its express decision to leave it unresolved.
 
 
 23
 A bankruptcy court may not allow the sale of property as "property of the estate" without first determining whether the debtor in fact owned the property. See Moldo v. Clark (In re Clark), 266 B.R. 163, 172 (9th Cir. BAP 2001) (holding that "[t]he threshold question, is [the property] still property of the estate, must ... be decided" before it can be sold free and clear under § 363(f)); Anderson v. Conine (In re Robertson), 203 F.3d 855, 863 (5th Cir.2000) ("Because the separate property home of [a nondebtor] was not included or owned in indivision with the property of the Debtor's bankruptcy estate, the Trustee lacked authority to sell her home ... as property of the estate in which there is an interest of `an entity other than the estate' under section 363(f)...."); In re Coburn, 250 B.R. 401, 403 (Bankr.M.D.Fla.1999) (finding it necessary to determine whether an asset is property of the estate in order to decide whether the trustee is entitled to sell the asset pursuant to § 363(f)). Thus, the bankruptcy court had no sound basis for holding that the Property was property of the estate.
 
 
 24
 The Property would not be property of the estate if, as Beverly claims, it was partnership property. That Rodeo, as a partner, had at least a 50% interest in the Property does not alter that conclusion. California state law determines whether a property constitutes property of the estate. See Dumas v. Mantle (In re Mantle), 153 F.3d 1082, 1084 (9th Cir.1998) (citing Butner v. United States, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979)). Under California's former Uniform Partnership Act, which governs because the partnership was formed before January 1, 1997, see CAL. CORP. CODE § 16111, "[a] partner is co-owner with the other partners of specific partnership property holding as a tenant in partnership." CAL. CORP. CODE § 15025(1). Although the language of the statute would seem to give Rodeo an interest in the property even if the partnership owned the property, California courts have ruled otherwise. In Munkdale v. Giannini, 35 Cal.App.4th 1104, 41 Cal.Rptr.2d 805 (Ct.App.1995), the court explained:
 
 
 25
 In all material respects, California Corporations Code section 15025 is identical to section 25 of the Uniform Partnership Act, a provision which has been described as follows: "Although stating that each partner is a co-owner of the partnership property, [§ 25 of the Uniform Partnership] Act systematically destroys the usual attributes of ownership.... Functionally, despite the literal language, the partnership owns its property and the partners do not. The Act would be better if it conceded this rather than accomplishing it by indirection." [Employers Cas. Co. v. Employers Commercial Union 632 F.2d 1215, 1219-20 (5th Cir.1980).] This description of ownership of partnership property was adopted by Division One of this court in Bartlome v. State Farm Fire & Casualty Co., [256 Cal.Rptr. 719, 722-23 (Ct.App.1989)].
 
 
 26
 41 Cal.Rptr.2d at 809 n. 6; see also Mayer v. Driver, 98 Cal.App.4th 48, 120 Cal.Rptr.2d 535, 542-43 (Ct.App.2002). Thus, if the partnership owned the Property, Rodeo did not own it under California law.
 
 
 27
 Nor was the Property part of the estate simply because Rodeo undisputedly held legal title to it. Where a debtor holds only legal title to property and no equitable ownership interest, "the sole permissible administrative act of the trustee or debtor-in-possession is to pay over or endorse over the property to the beneficiary." In re Signal Hill-Liberia Ave. Ltd. P'ship, 189 B.R. 648, 651 (Bankr.E.D.Va. 1995) (quoting Mid-Atlantic Supply, Inc. v. Three Rivers Aluminum Co. (In re Mid-Atlantic Supply Co.), 790 F.2d 1121, 1126 (4th Cir.1986)); see also 11 U.S.C. § 541(d) ("Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest... becomes property of the estate ... only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.").
 
 
 28
 The question whether the Property was property of the estate unavoidably rested on the question of equitable ownership. The bankruptcy court prematurely concluded that the Property was property of the estate without deciding the ownership question. The sale was therefore not authorized by law.
 
 
 29
 Because the sale, having been consummated, is no longer subject to collateral attack, our concern is with the disposition of the proceeds into which the Property has now been converted. Contrary to the BAP's reasoning, § 363 does not apply because the sale was not of property of the estate. See In re Manning, 831 F.2d at 207 ("[Section 363] does not authorize sale of the real property owned by the partnership [rather than the debtor partner], since it is not property of the estate."). Nevertheless, under equitable principles, if it is ultimately determined that the partnership owned the Property, the partnership would be entitled to the proceeds in excess of secured liens and other priority obligations and Rodeo's claim would be limited to the rights of a 50% partner.
 
 
 30
 The Warnicks contend that the sale and distribution were carried out pursuant to the Settlement Agreement which had been approved by the bankruptcy court and the approval affirmed by the BAP. Thus, they argue that Beverly's attack is on a compromise subject to review only for abuse of discretion. The argument misconceives the issue. As the BAP pointed out, "We do not affirm the approval of any provisions of the Settlement Agreement which purported to immediately distribute the disputed sale proceeds." Moreover, the settlement was premised on a sale pursuant to court approval and, as we have shown, the bankruptcy court's approval of the sale was error.
 
 
 31
 The question remains whether the BAP's disgorgement order should be affirmed. Although we disagree with the BAP's reasoning, we agree with its result. "[A] bankruptcy court is a court of equity and should invoke equitable principles and doctrines, refusing to do so only where their application would be inconsistent with the Bankruptcy Code." Beaty v. Selinger (In re Beaty), 306 F.3d 914, 922 (9th Cir.2002) (internal quotation marks omitted). A court may order parties to a bankruptcy appeal to disgorge improperly-distributed assets. See Spirtos v. Moreno (In re Spirtos), 992 F.2d 1004, 1006-07 (9th Cir.1993).
 
 
 32
 The Warnicks' attack on the disgorgement order is unavailing. They assert that Beverly ratified the Warnicks' trust deeds and agreed to pay $2,850,000 of the principal due. The ownership dispute is therefore unimportant, they say, because Beverly will owe the funds to the Warnicks if Rodeo's estate does not pay. This contention is premature. The bankruptcy court has not ruled on Beverly's liability to the Warnicks, and this issue is not properly before us.
 
 
 33
 The Warnicks also contend that the amount left in the estate — $2,998,000 — is sufficient to protect Beverly's claimed 50% interest. They reason that $5,148,000 is the maximum amount from the sale proceeds available for distribution to the partners after payment of secured liens, and half of that amount (Beverly's 50% share) is $2,574,000, considerably less than the amount left in the estate. Beverly, they insist, is therefore adequately protected.
 
 
 34
 The BAP properly rejected this contention. It pointed out, first, that the Warnicks' argument ignores the fact that it was Brighton's interest that was in dispute, not merely one partner's interest, and the partnership would be entitled to the entire net proceeds from the sale of its property, $5,148,000. Second, partnership property rights and interparty issues yet unresolved may lead to other than a 50-50 division of the proceeds. We find no error in the BAP's disgorgement order.
 
 
 35
 In its cross-appeal, Beverly challenges the compromise between the Warnicks and the Trustee on the further ground that it was tainted by fraud. Because we affirm the BAP's order, we do not need to reach this issue.
 
 CONCLUSION
 
 36
 We affirm the order of the BAP remanding the case to the bankruptcy court with instructions to order the Warnicks to disgorge $2,150,000, plus interest, to the Trustee to be held until the conclusion of the pending adversary proceeding resolving Beverly's claims.
 
 
 37
 AFFIRMED, with instructions.
 
 
 
 Notes:
 
 
 *
 The Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation