# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 7, 2011

No. 10-30473

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

MALCOLM PETAL, also known as Malcolm Rachmiel Petal, also known as
Malcolm R. Petal, II, also known as J. Malcolm Petal, also known as Malcolm
J. Petal,

Defendant–Appellant.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:08-CR-176

Before HIGGINBOTHAM, OWEN, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Malcolm R. Petal, proceeding pro se, appeals the district court's entry of
a final order of garnishment against William Bosch IV, the lessee of Petal's New
Orleans residence. We affirm but remand in the interest of justice and out of an
abundance of caution.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 10-30473

## I

Petal pleaded guilty to a charge of conspiracy to bribe a Louisiana state official in connection with a program receiving federal funds. The district court sentenced Petal to 60 months' imprisonment and payment of $1,350,000 restitution to the state of Louisiana.

Before reporting to federal prison, Petal entered into a residential lease agreement, leasing his New Orleans home to Bosch for $3,200 per month. After Petal reported to prison, the United States applied to the district court for a writ of garnishment to Bosch pursuant to the Federal Debt Collection Procedures Act (FDCPA).[1] The district court granted the application. Bosch, as required by statute, answered the writ.[2] Petal moved to quash the writ, arguing that the district court lacked jurisdiction to issue the writ because Petal did not have a substantial interest in the rental proceeds. Petal asserted that the mortgagee, Capital One, N.A. (the Bank), had a superior interest to his or the United States' interest in the lease proceeds under the terms of his mortgage. He additionally asserted that the Bank had foreclosed on the residence and was entitled to the lease proceeds.

The Government opposed Petal's motion to quash. The Government requested that the court issue a final order of garnishment directing Bosch to pay unpaid rents to the United States. The Government also requested that Ruth Petal, who was acting as Petal's agent and landlord, deliver any post-dated rent checks she possessed to the United States.[3] The district court denied Petal's

---

[1] 28 U.S.C. § 3205.

[2] *Id.* § 3205(c)(4).

[3] At this point, Petal filed a premature appeal in this court, which we dismissed for lack of jurisdiction. *United States v. Petal*, No. 10-30159 (5th Cir. April 28, 2010).

No. 10-30473

motion to quash and issued a final order of garnishment along the lines requested by the Government.

Petal timely appealed. The district court denied Petal's motion to stay the final order of garnishment pending appeal, finding that Petal lacked standing to assert the third party Bank's interests. This court also denied Petal's request for a stay without explanation.[4]

## II

The Government contends, for the first time on appeal, that Petal lacks standing. "The doctrine of standing asks whether a litigant is entitled to have a federal court resolve his grievance," a question that "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise."[5]

We must address the Government's challenge to constitutional standing, which pertains to our subject matter jurisdiction, before addressing the merits of the case.[6] To meet the constitutional standing requirement, a party must show "(1) an injury in fact (2) that is fairly traceable to the actions of the defendant and (3) that likely will be redressed by a favorable decision."[7] Petal asserted in the district court that garnishment of the rental proceeds was illegal because he did not have a "substantial . . . interest" in those proceeds, as required by 28 U.S.C. § 3205(a). He claimed he lacked such an interest because

---

[4] *United States v. Petal*, No. 10-30473 (5th Cir. Sept. 15, 2010).

[5] *Kowalski v. Tesmer*, 543 U.S. 125, 128 (2004) (internal quotation marks and citation omitted).

[6] *Del-Ray Battery Co. v. Douglas Battery Co.*, 635 F.3d 725, 729 (5th Cir. 2011) ("Defendants assert several new challenges to subject matter jurisdiction on appeal, which must be addressed before reaching the merits of the case.") (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)).

[7] *Proctor & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 560 (5th Cir. 2001) (citations omitted).

the Bank's rights to the proceeds following foreclosure were superior to his or the Government's rights, and also because the terms of his mortgage required that he pay the rental proceeds to the Bank. Petal's monthly payment obligation under his mortgage is $5,458.41. Petal also asserted that if the lease proceeds were not garnished, he could "preserve the asset" (the residence), a contention the Government does not contest. A favorable decision vacating the writ of garnishment would no doubt redress Petal's alleged injury stemming from the writ. Bearing in mind that whether Petal has "standing to make the argument is distinct from whether the argument has merit,"[8] we conclude that Petal satisfies the minimum requirements for constitutional standing.

The Government also argues that Petal lacks prudential standing to assert the Bank's rights. Prudential standing "embodies judicially self-imposed limits on the exercise of federal jurisdiction,"[9] and while we have previously addressed a party's prudential standing when that issue was not raised in the court below or in our court,[10] we are not required to do so.[11] We conclude that Petal has prudential standing to challenge the writ of garnishment to the extent he is seeking to advance his own financial interest, as distinguished from that of the Bank. Were Petal to succeed in his arguments, and the lease payments from Bosch were to be paid to the Bank, Petal's obligations to the Bank would be

---

[8] *United States v. DeCay*, 620 F.3d 534, 538 n.2 (5th Cir. 2010).

[9] *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004) (internal quotation marks and citation omitted).

[10] *Nat'l Solid Waste Mgmt. Ass'n v. Pine Belt Reg'l Solid Waste Mgmt. Auth.*, 389 F.3d 491, 498-99 (5th Cir. 2004) (addressing prudential standing *sua sponte*).

[11] *Ensley v. Cody Res., Inc.*, 171 F.3d 315, 320 (5th Cir. 1999) (holding that defendant waived prudential standing argument by failing to object in the trial court); *see also Baca v. Ladd*, No. 94-50581, 1996 WL 46567, at *3 n.3 (5th Cir. Jan. 19, 1996) (unpublished) ("Constitutional standing limitations may not be waived, but prudential standing restrictions may.").

No. 10-30473

correspondingly reduced. Petal is not seeking to enforce the Bank's interests for the Bank's sake, but to further his own interests.[12]

### III

We turn now to the merits of Petal's objections to the writ of garnishment. We review the district court's final order of garnishment for an abuse of discretion.[13] We review de novo underlying issues of statutory interpretation.[14]

The FDCPA provides, in relevant part, that a "court may issue a writ of garnishment against property (including nonexempt disposable earnings) in which the debtor has a substantial nonexempt interest and which is in the possession, custody, or control of a person other than the debtor, in order to satisfy the judgment against the debtor."[15] Property, in turn, is defined as "any present or future interest, whether legal or equitable, in real, personal (including choses in action), or mixed property, tangible or intangible, vested or contingent, wherever located and however held."[16]

In his motion to quash, Petal advanced two alternative arguments. First, he contended that garnishment was improper because the terms of his mortgage required that he pay the lease proceeds to the Bank. Second, Petal asserted that the Bank had foreclosed on the residence, and that the Bank's interest in the lease proceeds was superior to that of the United States or Petal under federal tax law and the FDCPA. As a result of his mortgage or the effect of the foreclosure, Petal argued that he did not have a "substantial interest" in the

---

[12] *Ensley*, 171 F.3d at 320.

[13] *United States v. Clayton*, 613 F.3d 592, 595 (5th Cir. 2010).

[14] *Id.*

[15] 28 U.S.C. § 3205(a).

[16] *Id.* § 3002(12).

proceeds subject to garnishment under the FDCPA. Petal continues to advance these arguments, as well as others, on appeal.

A copy of the residential lease and Petal's mortgage were before the district court, but Petal provided no evidence supporting his assertion that the Bank had foreclosed on the residence. Therefore, we evaluate the district court's issuance of the writ of garnishment looking only to the evidence properly before it when it issued the final order of garnishment.

We note at the outset that the Bank is not a party to this proceeding, and the issues before us are somewhat narrow. The question is whether Petal had a substantial interest in the proceeds from the Bosch lease that could be garnished based on the record before the district court. To answer that question, we need not resolve the precise contours of the Bank's interests under the mortgage or under Louisiana law. We conclude that notwithstanding any interest the Bank *may* have in the lease proceeds from Petal's property absent foreclosure on that property, Petal's interest in the lease payments is "substantial" within the meaning of the FDCPA and those payments were subject to garnishment.

The Bank is not a party to the residential lease, which names only Ruth Petal as payee. Petal does not dispute that payments were delivered from Bosch to Ruth Petal, not the Bank. As the Government points out, Petal's mortgage does not refer to or incorporate any of the statutory provisions of Louisiana law pertaining to assignment of rents.[17] Petal argues, however, that a provision of his mortgage granting "all rights" to the Bank includes the Bank's right to receive lease payments. That provision applies to "all my present and future rights, title and interests in and to the following described . . . immovable (real)

---

[17] *See, e.g.*, LA. REV. STAT. § 6:830(A) ("The mortgage *may* provide for an assignment of rents, and *if* such assignment is made, any such assignment shall become absolute upon the mortgagor's default . . . ." (emphasis added)).

property." As noted, we need not decide whether this conveyed to the Bank an interest in lease proceeds absent foreclosure because it appears from the record presently before us that any right the Bank may have had to lease proceeds was not self-executing in the sense that the "all rights" provision did not restrict Petal from collecting the lease proceeds, at least absent some demand or perhaps the invocation of some proceeding by the Bank. We do not consider whether the Bank would be entitled to collect the lease payments had it made a demand or initiated proceedings because there is no evidence of such actions in the record before us.

Petal contends that the district court should have determined that after the Bank foreclosed on the residence, the Bank obtained a lien priority ahead of the Government's on the fruits of that real property, specifically the lease proceeds. However, because there was no evidence before the district court that the Bank had foreclosed on Petal's residence, the district court did not err in failing to determine priorities of competing debtors under Louisiana or other law.

Petal's argument that the district court lacked authority to seize property that belonged to the Bank is similarly premised on his contention that the Bank had foreclosed on his residence.

The record before the district court demonstrated that Petal possessed a "substantial" "present or future interest" in personal property—the cash rental payments due—that were properly subject to garnishment.

## IV

Petal contends that the district court should have joined the Bank as a required party under Federal Rule of Civil Procedure 19. Petal did not seek to have the Bank joined in the district court. We cannot say that the district court abused its discretion in failing to join the Bank when the district court was never requested to do so.

No. 10-30473

**V**

During the pendency of this appeal, the Government moved the district court to issue a show-cause order to Bosch and Ruth Petal for failing to comply with the final writ of garnishment. The transcript of the show-cause hearing demonstrates that until October 2010, Bosch continued making lease payments to Ruth Petal, who in turn forwarded those payments—often along with personal funds to make up the difference between the lease and mortgage amount—to the Bank.[18] Before the magistrate issued her report and recommendation, the district court granted the Government's motion to dismiss the show-cause claim against Bosch, which the Government submitted after it reached a settlement with him. The magistrate's report and recommendation, which was adopted by the district court, declined to hold Ruth Petal liable for the lease proceeds forwarded to the Bank. The magistrate reasoned that Ruth Petal was not subject to the initial writ of garnishment and that she had not personally profited by forwarding the proceeds to the Bank. The magistrate did, however, sanction Ruth Petal $3,000 for failing to provide an accounting of the lease payments, as required by the final writ of garnishment, and also for her role in encouraging Bosch to disregard the writ of garnishment. Ruth Petal has separately appealed the contempt finding.

Also during the pendency of this appeal, Petal has moved this court to take judicial notice of a state court order issuing a writ of seizure and sale for the residence on August 11, 2009, attaching a copy of the state court order to his motion. This state court order precedes not only the final order of garnishment issued in April 2010, but also the initial issuance of the writ of garnishment in

---

[18] Neither the transcript nor the magistrate's report and recommendation are included in the record on appeal, but we "may take judicial notice of the record in prior related proceedings and draw reasonable inferences therefrom." *CitiFinancial Corp. v. Harrison*, 453 F.3d 245, 249 n.3 (5th Cir. 2006) (internal quotation marks and citation omitted).

No. 10-30473

November 2009. We decline to grant Petal's motion to take judicial notice because evidence of the foreclosure has not been presented to the district court.[19] Even were we to take judicial notice of this state court order, many questions appear unresolved. In proceedings before the magistrate judge that occurred after the present appeal was commenced, there is an indication that a new lease on Petal's residence was executed in June 2010 under which Bosch made payments directly to the Bank. However, there is an indication elsewhere that the new lease continues to be between Bosch and Petal and that Bosch began paying the Government the monthly lease payments in October 2010. The Bank's interests in the residence and lease payments from Bosch are far from clear, even were we to consider the state court order.

We again note that the Bank is not and has not been a party to the proceedings before us. At the show cause hearing in the district court, the United States Attorney made the following statement in response to the court's inquiry regarding the Bank's position regarding its mortgage:

> Not that we're aware of, Your Honor, but I'm glad you brought that point up, because that goes toward the point I referenced earlier, which is the degree of opposition there has been to these collection efforts, and that includes two Motions to Quash, one premature appeal, one timely appeal that's still pending, two Motions to Stay, and one Motion to Dismiss these show cause hearings for lack of jurisdiction.
>
> It's Malcolm Petal's contention somehow his mortgage company has a superior right to these rents than does the United States of America. The mortgage company, I've actually spoken with their lawyer, there is no such intention [sic], and if there was such a contention, it would be incumbent upon the mortgage company to make that. They are the proper party with standing to make that argument.

---

[19] *See Singleton v. Wulff*, 428 U.S. 106, 121 (1976).

No. 10-30473

It is unclear to us from the record whether any further proceedings in the district court might be appropriate, and the parties have not argued or briefed whether, under the FDCPA, the district court retains authority to modify the final order issuing the writ of garnishment that is the subject of this appeal.[20] In light of all that has transpired since Petal filed his notice of appeal, and out of an abundance of caution and in the interest of justice, we believe it is appropriate to remand this case to the district court so that it may take any action that may be warranted under the law and developing facts.

*        *        *

We AFFIRM the district court's entry of a final disposition order of garnishment and REMAND to the district court.

---

[20] *See* 28 U.S.C. § 3013 ("The court may at any time on its own initiative or the motion of any interested person, and after such notice as it may require, make an order denying, limiting, conditioning, regulating, extending, or modifying the use of any enforcement procedure under this chapter.").

10