Theodore Carlton RICHARDSON,
Appellant,

v.

Yvonne EDWARDS, Appellee.

No. 95–7302.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 2, 1997.

Decided Oct. 28, 1997.

Rehearing Denied Dec. 3, 1997.

T. Carlton Richardson, appearing pro se, argued the cause and filed the brief for appellant.

June White Dillard, Accokeek, MD, argued the cause and filed the brief for appellee.

Before: EDWARDS, Chief Judge, SENTELLE and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Circuit Judge RANDOLPH.

RANDOLPH, Circuit Judge:

T. Carlton Richardson filed a petition for voluntary bankruptcy in 1994. Among the debts he sought to discharge were two resulting from his 1990 Maryland divorce. The divorce decree incorporated portions of a Voluntary Separation and Property Settlement Agreement between Richardson and Yvonne Edwards, to whom he had been married for 20 years. The parties reached their settlement after trial and after the state court orally issued its opinion, but before

judgment was entered. The divorce decree (1) ordered Richardson to pay Edwards $750 per month for child support until the year 2000; and (2) incorporated the terms of the Settlement Agreement requiring Richardson to assume the second mortgage on the family home, holding Edwards harmless in the event he defaulted.

Edwards filed a complaint in the bankruptcy court seeking a determination that both of Richardson's obligations—the child support and the second mortgage assumption—were nondischargeable debts "in the nature of alimony, maintenance or support," 11 U.S.C. § 523(a)(5)(B). The bankruptcy court agreed with Edwards and the district court affirmed. *Edwards v. Richardson (In re Richardson)*, Ch. 7 Case No. 94–00324, Adv. No. 94–0083 (Bankr.D.D.C. June 6, 1995); *Richardson v. Edwards*, No. 95–1455 (D.D.C. Nov. 17, 1995). Richardson then brought this appeal.

## I

◼ Richardson offers two grounds for overturning the decision regarding his $750 monthly child support payments. Both grounds rely on the fact that Richardson's and Edwards' youngest child became eighteen years old, the age of majority in Maryland, *see Corry v. O'Neill*, 105 Md.App. 112, 658 A.2d 1155, 1157–58 (1995); MD. ANN. CODE art. I, § 24 (1996), on October 20, 1993.

◼ Richardson's first point is that when children reach the age of majority, only they may contest the dischargeability of child support obligations; they are the intended beneficiaries of the payments and, given their age, there is no longer any custodial parent. Hence, Richardson's former wife has no "standing." There is nothing to this. The divorce decree designates Edwards as the recipient of Richardson's child support payments, including payments to be made after the children reach the age of majority. Edwards would therefore suffer injury from the discharge of Richardson's debt, and her injury is capable of being redressed through a ruling that the support payments are nondischargeable. Edwards thus fulfills the constitutional requirements for standing to sue. *See Bennett v. Spear*, —— U.S. ——, ——,

117 S.Ct. 1154, 1160, 137 L.Ed.2d 281 (1997). In contending otherwise, Richardson has confused "standing" with the requirement that suits be prosecuted in the name of the "real party in interest," *see* FED. R. BANKR.P. 7017 (incorporating FED. R. CIV. P. 17(a)), an objection we will not entertain because Richardson failed to raise it in the bankruptcy court. *See Whelan v. Abell*, 953 F.2d 663, 672 (D.C.Cir.1992). Whether asserted in a motion to dismiss for failure to state a cause of action, or as an affirmative defense, *see* 6A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1554, at 405–09 (2d ed.1990), *see also* FED. R. BANKR.P. 7008 (incorporating FED.R.CIV.P. 8); FED. R. BANKR.P. 7012(b) (incorporating FED.R.CIV.P. 12(b)), a "real party in interest" objection must be made "with reasonable promptness." 6A WRIGHT, *supra*, § 1554, at 407. To wait until the case reaches the court of appeals is to waive the objection.

◼ Richardson's second point is that his obligation to pay Edwards $750 per month until the year 2000 cannot be considered child "support" within the meaning of § 523(a)(5). According to him, these payments resulted from the property settlement between him and Edwards. Besides, under Maryland law he had no legal duty to provide child support after his youngest child reached majority in 1993. *See Corry*, 658 A.2d at 1157–58. There are more than a few problems with this line of thinking.

Richardson's initial error is in supposing that child "support" cannot stem from a "property settlement." The law is precisely the opposite. Section 523(a) states:

> (a) A discharge under Section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

> \*　　\*　　\*　　\*　　\*　　\*

> (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or terri-

torial law by a governmental unit, or property settlement agreement, but not to the extent that—

(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 408(a)(3) of the Social Security Act, or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State); or

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support.

To simplify, a debt shall not be discharged if it is "to a spouse, former spouse, or child of the debtor" for "support of such spouse or child, in connection with" a "property settlement agreement." Even by Richardson's lights, that is what occurred here—the child support was "in connection" with a property settlement.

At any rate, Richardson's legal obligation to make the monthly payments derived not simply from the parties' agreement, but from the Maryland court's judgment for absolute divorce. Without referring to the agreement, the court ordered "that the Defendant pay to the Plaintiff as for child support and maintenance the sum of seven hundred and fifty dollars ($750.00) monthly, payable semi-monthly effective as of May 1, 1990 through April 30, 2000 without modification...." And so, on the face of the judgment, Richardson's child support obligation was—in the language of § 523(a)(5)—"in connection" with a divorce decree. True, this part of the judgment reflected the parties' "Voluntary Separation and Property Settlement Agreement." But the portion of the agreement dealing with child support was not even in the "Marital Property" section, which divided the parties' jointly-held property. It was set out in a separate section entitled "Custody, Visitation, and Support," a placement inconsistent with Richardson's claim that the monthly payments represented a property settlement rather than child support.

■ As to Maryland law, the fact that the legal duty to pay child support ends when the child reaches majority is not determinative. Federal bankruptcy law, not state law, controls whether an obligation is a nondischargeable support obligation under § 523(a)(5). *See* H.R.Rep. No. 95–595, at 364 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6320; *Brody v. Brody (In re Brody)*, 3 F.3d 35, 39 (2d Cir.1993); *Sampson v. Sampson (In re Sampson)*, 997 F.2d 717, 721 (10th Cir.1993); *Gianakas v. Gianakas (In re Gianakas)*, 917 F.2d 759, 762 (3d Cir.1990); *Sylvester v. Sylvester*, 865 F.2d 1164, 1166 (10th Cir.1989) (per curiam); *Harrell v. Sharp (In re Harrell)*, 754 F.2d 902, 905 (11th Cir. 1985); *Long v. Calhoun (In re Calhoun)*, 715 F.2d 1103, 1107 (6th Cir.1983). Section 523(a)(5) speaks of "child" support, not support of a "minor child," and there is no doubt that Richardson's monthly payments were for the benefit of his children regardless of their ages. In the Settlement Agreement, Richardson promised to pay a total of $90,-000 "for the support and maintenance of the children of the parties." The monthly payment schedule, negotiated by the parties and ordered by the court, spread Richardson's debt over a period extending beyond his youngest child's 18th birthday. This did not convert the nature of Richardson's obligation into something other than "child" support for the purpose of federal law. Here, we follow Judge Learned Hand, speaking for the court in *In re Adams*: the "fact that the parties chose to spread their payments over a period which might ... pass beyond the time when any such duty [of support] would exist" did not cause the payments to lose their "character as ... support." 25 F.2d 640, 642 (2d Cir.1928) (quotations omitted).

■ Richardson meant the payments to be for child support; the parties characterized the payments that way; the Maryland court treated the payments as child support; and any reasonable person viewing the settlement agreement and the divorce decree would come to the same conclusion, as did the bankruptcy judge and the district court. We therefore join *Harrell*, 754 F.2d at 905, and *Boyle v. Donovan*, 724 F.2d 681, 683 (8th Cir.1984), in holding that a debtor's obligation under a court order, and pursuant to a settlement agreement, to pay post-majority

child support is nondischargeable under § 523(a)(5) even if the obligation exceeds the requirements of state law.

## II

This brings us to the second mortgage. The Settlement Agreement provided that Richardson would convey all his interest in the family home to Edwards, that he would pay the existing second trust on the home and take out a life insurance policy to pay off the second trust in the case of his death, and that Edwards would hold him harmless for any default on the first trust. In return, Edwards agreed to convey her interest in another property to Richardson. In the divorce decree, the Maryland court simply ordered "that all property settlement matters are resolved pursuant to the [Settlement Agreement] and incorporated but not merged into this Order. . . ."

The bankruptcy judge found the Settlement Agreement "at least ambiguous regarding whether the obligation to pay the second deed of trust was intended to be in the nature of support." *Edwards,* slip op. at 15. The judge then looked to extrinsic evidence of the parties' intentions, *id.* at 17–18, including their proposals and counter-proposals during negotiations, and concluded that the second mortgage payment was intended to provide "support" rather than serve as a means of dividing property. *Id.* at 1, 18. The district court affirmed on the ground that the bankruptcy judge's decision was not "clearly erroneous." *See Richardson,* No. 95–1455.

Before we start assessing the merits, we must say a few words about the standard of review we apply here (and have followed in the previous section). We do not agree that the standard is of the "clearly erroneous" variety, although some other courts have so assumed without discussion. *See, e.g., Brody,* 3 F.3d at 38; *Sampson,* 997 F.2d at 721; *Boyle,* 724 F.2d at 683. A divorce decree incorporating a settlement agreement is simply a consent decree. There is no reason for treating divorce decrees differently than other consent decrees in terms of the scope of appellate review. We customarily review decisions interpreting consent decrees and the agreements underlying them *de novo,* in the same manner as we review decisions interpreting contracts. *See, e.g., United States v. ITT Continental Baking Co.,* 420 U.S. 223, 236, 95 S.Ct. 926, 934, 43 L.Ed.2d 148 (1975); *Alliance to End Repression v. Chicago,* 119 F.3d 472, 474 (7th Cir.1997); *Beckett v. Air Line Pilots Ass'n,* 995 F.2d 280, 284, 286 (D.C.Cir.1993); *United States v. Western Elec. Co.,* 846 F.2d 1422, 1427 (D.C.Cir.1988). We do so because a consent decree is a form of contract. *See id.* It is approved on its face by a court presumably not privy to the details of negotiation, or the parties' subjective intentions; it is then incorporated in a judicial order; and it is ultimately backed up by the court's power of contempt. The Supreme Court has warned against searching "for the 'purpose' of a consent decree" and then construing it in that light. *ITT Continental Baking,* 420 U.S. at 235, 95 S.Ct. at 933. The decree must be construed "as it is written." *Id.* at 238, 95 S.Ct. at 935. Ordinary "aids of construction," such as the circumstances surrounding the formation of the consent order, may be consulted. *Id.* at 238 & n. 11, 95 S.Ct. at 935 & n. 11. But ultimately the question for the lower court, when it interprets a consent decree incorporating a settlement agreement, is what a reasonable person in the position of the parties would have thought the language meant. *See, e.g., Colfax Envelope Corp. v. Local No. 458–3M, Chicago Graphic Communications Int'l Union,* 20 F.3d 750, 754 (7th Cir.1994); *Quadrangle Dev. Corp. v. Antonelli,* 935 F.2d 1337, 1340 (D.C.Cir.1991); *Lee v. Flintkote Co.,* 593 F.2d 1275, 1281 n. 30 (D.C.Cir.1979); *see also* E. ALLAN FARNSWORTH, CONTRACTS § 7.14 (2d. ed.1990). That too is the question on appeal and it is a question of law, which is why review is *de novo.*

As to the merits, we find the Settlement Agreement neither vague nor obscure. To be sure, the bankruptcy court found otherwise after careful and thorough consideration. But it appears to us, in light of the Agreement's language and structure, that there is no hidden meaning, no lurking ambiguity. The Agreement states that Richardson will assume the second mortgage as part

of the division of marital property. Nothing suggests that the parties were using the second mortgage assumption as a means of providing alimony or child support.

The Settlement Agreement is divided into six sections, only two of which are relevant. The section headed "Custody, Visitation, and Support" describes custody arrangements and Richardson's child support obligations. The section headed "Marital Property" divides up the parties' marital property and includes the provision obligating Richardson to pay the second mortgage. This in itself is a strong indication that Richardson's second mortgage obligation was exactly what it purported to be, a means of allocating the parties' property.

The bankruptcy judge focused on one of the Agreement's opening Recitals, which stated that "it is [the parties'] intent to resolve all martial [sic] property rights," including "alimony." *See Edwards,* slip op. at 12, 14. We do not agree that the reference to "alimony" casts doubt upon the nature of the second mortgage provision. ·Edwards did not include a claim for alimony in her Complaint for Absolute Divorce, and the Maryland court never mentioned it in its oral opinion rendered before the parties settled the case. That the parties said they were resolving alimony, which was not an issue in the divorce proceedings, scarcely means that the second mortgage payments were alimony or something in the nature of alimony.

The mortgage payments are not even structured in the form of support payments. Richardson's responsibility for the mortgage is not contingent upon changes in the parties' financial circumstances, or the continued occupation of the house by Edwards or the children,[1] or the death or remarriage of Edwards, all of which would be expected if the mortgage payments were alimony or support. *Cf. Wright v. Commissioner,* 543 F.2d 593, 599 (7th Cir.1976).[2] Under the Internal Revenue Code, which, like the Bankruptcy Code, also requires federal courts to distinguish alimony payments from property settlements, courts must look to the form of the payment in drawing the distinction. *See* 26 U.S.C. § 71(b)(1)(A-D) (to qualify as alimony, payments must be received by a spouse under a divorce or separation agreement, the payor and payee must not be members of the same household, and payments must terminate upon payee's death); *see also* H.R.Rep. No. 98–432, pt. 2, at 1496 (1984), *reprinted in* 1984 U.S.C.C.A.N. 697, 1138 ("In order to prevent the deduction of amounts which are in effect transfers of property unrelated to the support needs of the recipient, the bill provides that a payment qualifies as alimony only if the payor ... has no liability to make any such payment for any period following the death of the payee spouse."). The unconditional form of the mortgage payments here, together with their placement in the "Marital Property" section of the Agreement, leads to the conclusion that the payments were not in the nature of alimony or support.

 Perhaps because of these considerations, Edwards does not argue that the mortgage payments were intended to serve specifically as child support or alimony. Instead, she contends that under § 523(a)(5) any obligation incurred by the debtor that serves to support the debtor's spouse—as did Richardson's assumption of the second mortgage payments—qualifies as a nondischargeable debt. We are uncertain whether the bankruptcy judge embraced this proposition, but we are certain that it proves too much. Money is fungible. The divorcing couple is well aware that the basket of goods to be divided among them is finite. The amount and duration of support or alimony payments may well depend on the division of property the couple settles upon. To some degree, all property awards help to "support" the receiving spouse, yet such awards are clearly

---

1. In fact, the Agreement specifically contemplates the possibility that Edwards and the children would move. A provision of the Agreement requires Edwards to inform Richardson of the children's location should she change address.

2. According to Richardson's brief, he took out the second mortgage in order to secure a business loan; when married, the couple viewed the obligation not as a joint debt, but rather as a business debt assumed by Richardson; and prior to their divorce, Edwards paid the first mortgage out of her salary, while Richardson paid the second mortgage.

not within § 523(a)(5)'s exemption.[3] The statute distinguishes nondischargeable spousal and child support payments from property settlements. It "makes nondischargeable any debts ... in payment of alimony, maintenance, or support of the spouse, as determined under bankruptcy law considerations as to whether a particular agreement to pay money to a spouse is actually alimony or a property settlement." S.REP. No. 95–989, at 79 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5865.

Richardson's assumption of the second mortgage is neither alimony, nor spousal or child support within the protection of § 523(a)(5). It is exactly what it purported to be and what the Maryland court must have construed it to be—namely, an essential part of the parties' agreed-upon division of property, and thus an obligation dischargeable in bankruptcy.

\*　　\*　　\*

Richardson's child support obligations are nondischargeable under § 523(a)(5) of the Bankruptcy Code. His obligation to pay the second mortgage on the Maryland home is dischargeable.

*Affirmed in part, reversed in part.*

---

**3.** Why, one might ask, should not property settlements also be nondischargeable in bankruptcy? Congress recently asked itself this question and answered by amending § 523 to provide that, under certain conditions, property settlements are also nondischargeable. *See* Bankruptcy Reform Act of 1994, Pub L. No. 103–394, § 304(e), 108 Stat. 4106, 4133. Richardson filed his petition before October 22, 1994, the effective date of the Act, and the amendment therefore does not apply.