# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

————

Argued November 20, 2014      Decided February 6, 2015

No. 13-5303

TIMOTHY C. PIGFORD, ET AL.,
APPELLEES

v.

THOMAS J. VILSACK, SECRETARY OF AGRICULTURE,
APPELLANT

MAURICE MCGINNIS,
APPELLEE

————

Appeal from the United States District Court
for the District of Columbia
(No. 1:97-cv-01978)

————

*Charles W. Scarborough*, Attorney, U.S. Department of Justice, argued the cause for appellant. With him on the briefs were *Stuart F. Delery*, Assistant Attorney General, *Ronald C. Machen Jr.*, U.S. Attorney, and *Marleigh D. Dover*, Attorney.

*John M. Shoreman* argued the cause and filed the brief for appellee Maurice McGinnis.

Before: TATEL and WILKINS, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* WILKINS.

WILKINS, *Circuit Judge*: Appellee Maurice McGinnis farmed cotton and soybeans in the Mississippi River Delta near Yazoo City, Mississippi. Like millions of other small family farmers, he sought a loan through federal farm credit programs administered by the United States Department of Agriculture. And he alleges that, like tens of thousands of other African-American farmers, he was denied access to those programs by the Department because of his race.

McGinnis participated in a claims process established by a class action settlement agreement to resolve his and other farmers' discrimination claims. There is no question that, under this scheme, many claimants' rights were vindicated. Yet in McGinnis' case the process failed dramatically. Repeatedly, the persons tasked under the Consent Decree with processing his claim ignored or misinterpreted his clearly expressed wishes about how his claim should proceed. Finally, over a decade after McGinnis first filed his claim, he turned to the courts to vindicate his rights. Recognizing the Kafkaesque ordeal he had endured, the District Court awarded McGinnis the relief he sought: not an award on the merits of his claim, but merely the opportunity to make his case in the arbitration forum provided for under the settlement agreement. We affirm.

## I.

The underlying class action settlement in this case is not new to our Court. In 1997, four hundred and one African-American farmers from the South and Midwest brought suit against the United States Department of Agriculture (the "Department")—now headed by Appellant Secretary Thomas

Vilsack—under the Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq.*, alleging that the Department discriminated against them in denying applications for credit and benefit programs. *See generally Pigford v. Glickman*, 185 F.R.D. 82 (D.D.C. 1999). The District Court certified a class for the purpose of determining the Department's liability in October 1998, *Pigford v. Glickman*, 182 F.R.D. 341 (D.D.C. 1998), and certified a slightly modified class for all purposes in early 1999. The class included all African-American farmers who (i) farmed between 1981 and 1996, (ii) applied to the Department for a federal farm credit or benefit program during that period and believed the Department discriminated against their application on the basis of race, and (iii) filed a discrimination complaint before mid-1997. *Pigford v. Glickman*, 185 F.R.D. at 92.

After several months of negotiations, the parties reached a settlement of their claims and filed a proposed consent decree (the "Consent Decree") with the District Court, which it approved. *Id.* at 85-86. We upheld the settlement as "an indisputably fair and reasonable resolution of the class complaint." *Pigford v. Glickman*, 206 F.3d 1212, 1219 (D.C. Cir. 2000). Eventually, 21,546 claimants were accepted as class members for review under the settlement agreement. *Pigford v. Veneman*, 292 F.3d 918, 921 (D.C. Cir. 2002).

The Consent Decree establishes a two-track claim-resolution process to determine the validity of claims and appoints (or empowers the District Court to appoint) several third-party neutrals to administer the scheme. Depending on which track a claimant chooses, his claim is resolved by either an "adjudicator" (Track A) or an "arbitrator" (Track B). Under Track A, a claimant's allegations are reviewed under the forgiving "substantial evidence" standard. A prevailing claimant is entitled to a one-time payment of $50,000 and

forgiveness of any debt he owes the USDA. J.A. 11 (Consent Decree ¶ 1(*l*)), 20-22 (*Id.* ¶ 9). Those who select Track B must establish their claim by a preponderance of the evidence—a higher burden of proof—but may seek an unlimited amount in monetary damages if they prevail after a day-long live hearing. J.A. 23-26 (Consent Decree ¶ 10). The Consent Decree also appoints a "facilitator" to publicize the settlement, mail claim packages to claimants, receive and process completed claim packages, determine whether those who submit a claim package are class members, and transmit the claim packages of class members to the adjudicator or arbitrator for determination. *See* J.A. 11 (Consent Decree ¶ 1(i)) (defining "facilitator" as third-party tasked with "assign[ing] claims to adjudicators and arbitrators for final resolution"). Finally, the Consent Decree provides for the court to select a monitor, who must, among other duties, direct the facilitator, adjudicator, or arbitrator to reexamine any claim in which it finds "clear and manifest error has occurred in the screening, adjudication, or arbitration of the claim and has resulted in . . . a fundamental miscarriage of justice." J.A. 28 (Consent Decree ¶ 12(b)(iii)).

Under Paragraph 13 of the Consent Decree, the District Court retains jurisdiction to issue orders "concerning the alleged violation of any provision." *See* J.A. 29 (Consent Decree ¶ 13); *see also* J.A. 34 (Consent Decree ¶ 21) (District Court retains authority to enforce the Consent Decree on a party's motion for contempt). However, the Consent Decree also includes a "finality provision" that specifies that decisions of the adjudicator and arbitrator are "final," subject to review only by the monitor, and the parties consent "to forever waive their right to seek review in any court" of "any claim that is, or could have been[,] decided by" the adjudicator or arbitrator. J.A. 22 (Consent Decree ¶ 9(a)(v)); 26 (*Id.* ¶ 10(i)).

On August 6, 1999, Appellee Maurice McGinnis filed a claim sheet and election form alleging the Department discriminatorily denied him operating loans between 1991 and 1996 and emergency loans in 1994 and 1996, purportedly because he had an unpaid prior loan balance and insufficient cash flow.  J.A. 39-40.  He alleged that the Department had granted loans to similarly situated white farmers during the same period.  On his claim sheet, McGinnis appears to have initially written an "X" in the box corresponding to Track B, but later crossed that out and initialed beside it and wrote an "X" in the box corresponding to Track A.  J.A. 38.  McGinnis then completed in some detail an addendum to the claim sheet entitled "TRACK A – ADJUDICATION CLAIM AFFIDAVIT" that instructed claimants to "[o]nly complete this affidavit if you have elected to settle your claim under the Track A – Adjudication option."  J.A. 39; *see id.* at 38-41.  The District Court therefore concluded that, although he "may have initially selected Track B before changing his mind," McGinnis' claim sheet "unambiguously selected Track A." *Pigford v. Vilsack*, 961 F. Supp. 2d 82, 84 n.2 (D.D.C. 2013).

Soon thereafter, however, McGinnis called the facilitator—then the Poorman-Douglas Corporation, subsequently acquired by Epiq Systems ("Epiq")—and asked to switch his choice to Track B, and sent the facilitator a letter "confirm[ing] that . . . I have indeed filed my claim and/or petition under 'Plan B' instead of Plan A as originally thought."  J.A. 42.  Nevertheless, the facilitator forwarded McGinnis's claim to the *adjudicator*, responsible for determinations of entitlement under Track A, who determined on June 14, 2000 that McGinnis had not established his claim by substantial evidence and denied his claim.  J.A. 43-45.

McGinnis then filed a Petition for Monitor Review ("PMR"), prepared by a member of class counsel and not the attorney who assisted him in submitting his initial claim, requesting that the monitor remand his claim to the arbitrator for determination under Track B. *See* J.A. 46-48. McGinnis explained that he had intended to proceed under Track B,[1] and therefore omitted certain supporting details of the discrimination he suffered from his claim sheet. J.A. 46. In the alternative, he requested remand of his case to the adjudicator for reconsideration, and submitted additional evidence. J.A. 46-48. Over six years later—by which point the monitor still had not acted on McGinnis' four-page PMR—Epiq contacted class counsel David Frantz, who had not advised McGinnis in completing his claim sheet or assisted in preparing his PMR, and asked whether McGinnis still wished to switch to Track B. J.A. 91. Neither Epiq nor the monitor attempted to contact McGinnis or his counsel directly. After speaking with McGinnis, Frantz emailed Epiq that McGinnis "wishe[d] for his PMR to proceed as is." J.A. 94. Rather than request clarification, Epiq interpreted Frantz's vague, one-sentence email, by which he apparently meant that McGinnis continued to seek a determination under Track B, to mean that McGinnis wished to proceed with his "original election of Track A." J.A. 92, 95. Epiq emailed the monitor to that effect. In a decision issued in January 2008, the monitor concluded that the adjudicator made a "clear and manifest error" in rejecting McGinnis' claim sheet and

---

[1] Confusingly, McGinnis's PMR, in trying to explain that he believed his claim would be determined under Track *B*, actually states that he "thought he was proceeding under Track A." J.A. 46. As the District Court concluded and as McGinnis' repeated requests to switch to Track B after submitting his claim sheet and throughout his PMR demonstrate, however, this reference to Track A was merely a "particularly unfortunate" typographical error. *Pigford v. Vilsack*, 961 F. Supp. 2d at 85 n.3.

admitted into the record much of McGinnis's new evidence. J.A. 49-80.[2] Although she concluded that the determination of McGinnis's claim under Track A rather than Track B had been a "mistake in the claims process," the monitor explained that "pursuant to discussions with the facilitator, the parties and the Monitor have established that [McGinnis] will proceed as a Track A claimant," and remanded his case to the adjudicator for reconsideration. J.A. 71-72. Upon reexamination in May 2008, the adjudicator found McGinnis had established an entitlement to relief and awarded him $50,000. J.A. 81-84. McGinnis refused to accept payment. J.A. 88.

McGinnis's sister contacted the arbitrator in the autumn of 2010 to explain that McGinnis had intended to pursue a Track B claim. The arbitrator expressed his sympathy that, due to confusion about his selection, McGinnis had been sorted into Track A, but explained that he lacked the authority to arbitrate McGinnis' claim under the Consent Decree. J.A. 85.

In November 2012, McGinnis petitioned the District Court for an order instructing the arbitrator to determine his claim. In granting the petition, the court first rejected the Department's position that Paragraph 13 of the Consent

---

[2] The monitor's response to McGinnis's PMR provides the most comprehensive summary of his claim, since he did not attach his full PMR (including exhibits) to his District Court petition, or in the Joint Appendix he filed with this Court. *See* Motion to Enforce Consent Order, *Pigford v. Vilsack*, No. 1:97-cv-01978 (D.D.C. Nov. 2, 2012), ECF No. 1853. Her analysis mentions that McGinnis claims he lost $160,000 in farm revenue due to the Department's denial of his credit applications, which explains why he wishes to proceed under Track B rather than Track A, which permits recovery of only $50,000. J.A. 53.

Decree only authorized court review of the parties'—not the third-party neutrals'—actions. *Pigford v. Vilsack*, 961 F. Supp. 2d at 88-89. The Government does not appeal this conclusion. *See* Appellant's Reply Br. at 3. It then held that McGinnis's petition did not implicate the finality provisions of the Consent Decree because he did not request review of the adjudicator's decision, but rather the facilitator's decision to shunt McGinnis' claim into Track A adjudication. *Pigford v. Vilsack*, 961 F. Supp. 2d at 89-90. The court reasoned that nothing in the text of the Consent Decree renders the decisions of the *facilitator* unreviewable, and the "apparent purpose" of the finality provision is to prevent the parties from appealing adverse determinations by the adjudicator or arbitrator on the merits, not an erroneous claim processing decision. *Id.* at 90. The District Court then found it beyond argument that the third-party neutrals had erred both in designating McGinnis' claim a Track A claim at the outset and in disregarding his subsequent attempt to change to Track B, in violation of Paragraph 3(a)(vii) of the Consent Decree, and vacated his Track A award and remanded his claim to the arbitrator for Track B consideration. *Id.* at 91. The Department timely appealed the District Court's decision.

## II.

We review a district court decision interpreting a consent decree and any underlying agreement *de novo*. *Richardson v. Edwards*, 127 F.3d 97, 101 (D.C. Cir. 1997).

As a threshold matter, and as the Department notes, the District Court only possessed jurisdiction to remedy violations of provisions of the Consent Decree. *See* Appellant Br. 16-17. While it may be a "well-established principle. . . that a district court retains jurisdiction under federal law to enforce its consent decree[s]," *Beckett v. Airline Pilots Ass'n*,

995 F.2d 280, 286 (D.C. Cir. 1993), it retains this authority only if the parties' agreement or the court order dismissing the action reserves jurisdiction to enforce compliance. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994). Even where, as here, the Consent Decree does retain jurisdiction in the District Court to enforce its terms, the court still lacks a "free-ranging 'ancillary' jurisdiction," and is limited by the explicit terms of the parties' agreement. *Pigford v. Veneman*, 292 F.3d at 924 (reversing District Court order permitting arbitrators to extend the deadlines mandated by the Consent Decree). Here, Paragraph 13 of the Consent Decree limits the District Court to remedying violations of the terms of the Consent Decree and the accompanying order. *Id.* The District Court recognized this limitation on its jurisdiction, observing that it only retained jurisdiction to enforce the Consent Decree's specific terms. *See Pigford v. Vilsack*, 961 F. Supp. 2d at 87.

We conclude that Paragraph 13 of the Consent Decree empowers the District Court to correct an error by the facilitator in transmitting a claim to the wrong track. The Department suggests the court overstepped the narrow scope of its jurisdiction, but any action by the facilitator transmitting to the adjudicator a claim package that selects Track B would violate the Consent Decree's explicit command that the facilitator "*shall* . . . transmit to the arbitrator the claims packages of class members . . . who elect to proceed under Track B." J.A. 13 (Consent Decree ¶ 2(a)(vii)) (emphasis added). Hence, if it is true that McGinnis selected Track B and the facilitator nevertheless sent his claim package to the adjudicator, the District Court did no more than enforce the parties' agreement.

The Department makes much of the fact that reversing the facilitator's claim transmittal to the adjudicator

incidentally required the District Court to vacate the adjudicator's merits determination that McGinnis was entitled to relief. Appellant's Br. at 15, 18-19. While it is true that the Consent Decree renders any determination by the adjudicator "final" and unreviewable by any court once the monitor has considered any petition for review, J.A. 22 (Consent Decree ¶ 9(a)(v)); 26 (*Id.* ¶ 10(i)), this argument begs the question. McGinnis's petition and the court's review focused not on the adjudicator's conduct, but on the *facilitator's*. The decision McGinnis appeals—the allocation of his claim to Track A—is not one the adjudicator made or was empowered to make under the Consent Decree. *Only* the facilitator was authorized to refer a completed claim package to the adjudicator or arbitrator. *See* J.A. 17 (Consent Decree ¶ 5(f)). The facilitator sorted McGinnis' claim into Track A adjudication, and the adjudicator had no involvement in this screening determination. The Consent Decree does nothing to insulate the facilitator's decisions from appeal.

Moreover, vacating the adjudicator's determination was a matter of black letter contract law. The Consent Decree, as a written reflection of the parties' bargain resolving their case, should be interpreted as a contract. *United States v. Volvo Powertrain Corp.*, 758 F.3d 330, 339 (D.C. Cir. 2014) (citing *Segar v. Mukasey*, 508 F.3d 16, 21 (D.C. Cir. 2007)). In interpreting a settlement agreement, the use of aids to construction, including "the circumstances surrounding the formation of the consent order," is permitted. *United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 238 (1975). Looking to the circumstances that led the parties to strike the bargain embodied by the Consent Decree, which it well knew from its decades-long supervision of the settlement agreement and claims mechanism, the District Court reasonably concluded that the purpose of the finality provision was to prevent either party from appealing an *adverse* determination on the merits.

*Pigford v. Vilsack*, 961 F. Supp. 2d at 90. The District Court had noted in its 1999 opinion approving the settlement that the finality provision stemmed from class counsels' fears that the Government would appeal decisions granting class members relief, thereby delaying recovery. *See Pigford v. Glickman*, 185 F.R.D. at 107-08. The Government argues that even non-adverse adjudicator determinations are unappealable because allowing any appeal would disserve the goal of "avoid[ing] endless rounds of duplicative litigation," but the incentives of a class member like McGinnis, seeking a reversal of the procedural claim processing that landed him before the arbitrator, will not lead to such a result. *See* Appellant Br. at 13. What he seeks is not a "second bite at the apple" but to have a "first bite" in front of the decisionmaker he asked for to begin with. Even conceding, therefore, that the parties "have a strong interest in ensuring the finality" of merits determinations under a claimant's elected track, *see* Appellant Br. at 18, does not imply that determinations made on the wrong track are beyond review.

Given the contradiction between the finality provision and the section of the Consent Decree governing the facilitator's duties, the District Court reasonably looked to the parties' purpose in rendering adjudicator decisions final. The Department objects, noting that, in *Pigford v. Veneman*, 292 F.3d at 924, we foreclosed any reliance on the Consent Decree's "overarching remedial purposes." Appellant Br. at 16-18. But disregarding the unambiguous text of the Consent Decree in favor of its purpose is a world away from simply looking to the "apparent purpose" of one contractual provision to resolve a contradiction with another clause. The District Court was clearly justified in looking to the finality provision's aims to ensure that its interpretation of the potentially contradictory text corresponded to the parties' understanding of their bargain. *See Volvo Powertrain*, 758

F.3d at 339 ("[U]ltimately the question for the lower court, when it interprets a consent decree incorporating a settlement agreement, is what a reasonable person in the position of the parties would have thought the language meant.") (alteration in original) (quoting *Richardson*, 127 F.3d at 101).

Most importantly, to deny review of a facilitator's erroneous claim transmittal would frustrate the purpose of Paragraph 13 of the Consent Decree, in which the parties explicitly provided for judicial review to enforce compliance with the agreement's terms. *Pigford v. Veneman*, 292 F.3d at 924. *See Fort Sumter Tours, Inc. v. Babbitt*, 202 F.3d 349, 358 (D.C. Cir. 2000) (A reviewing court "must give reasonable meaning to all parts of the contract and not render portions of [it] meaningless."); RESTATEMENT (SECOND) OF CONTRACTS § 203 cmt. b (1981) ("Since an agreement is interpreted as a whole, it is assumed in the first instance that no part of it is superfluous.").  The Consent Decree provides no mechanism for a claimant to learn that his claim package was transmitted to the adjudicator before he receives a decision on the merits.  McGinnis consequently did not know that the facilitator had ignored his Track B request until after he was informed that his claim had been denied by the adjudicator in mid-2000.  By this point, under the Department's reading of the Consent Decree, the error in processing his claim was fully insulated from any judicial review.

The District Court was correct to note the perverse result that would follow from allowing the adjudicator or arbitrator's decision to shield the facilitator's violation of the Consent Decree from review, simply because the adjudicator or arbitrator had proceeded to a determination on the merits before the court could intervene. *See Pigford v. Vilsack*, 961 F. Supp. 2d at 89-90.  The Court will not sanction a result that

would permit, for example, the facilitator to simply refuse to transmit any claim packages to the adjudicator, or reject valid claim packages based on some arbitrary criteria such as the geographical origin or age of a claimant. To hold that any action by the facilitator or monitor that violates the Consent Decree becomes unreviewable the moment the adjudicator unilaterally ratifies it would work a patent injustice and thwart the aim of the settlement. *See Pigford v. Veneman*, 292 F.3d at 925 (noting that parties bargained to give the District Court enforcement authority to correct violations of the decree). We therefore affirm the District Court's conclusion that it could review the facilitator's claim processing and vacate the adjudicator's determination.

## III.

It remains for the Court to determine whether McGinnis' completed claim package actually selected Track B. We think that McGinnis' request to change his claim to Track B was sufficiently close in time to his submission of the claim package, and the language of the Consent Decree defining what constitutes a "completed claim package" is sufficiently ambiguous, to justify the District Court in granting his petition.

The Consent Decree cautions that "[a]t the time a claimant . . . submits his completed claim package, he must elect whether to proceed under Track A . . . or Track B," a selection that "shall be irrevocable and exclusive." J.A. 16 (Consent Decree ¶ 5(d)). The Department argues that, even if the District Court had the authority to reverse the adjudicator's decision based on the facilitator's error, this provision makes McGinnis' selection of Track A on his claim sheet final. Appellant's Br. at 20-22.

The Consent Decree does not define what renders a claim package "completed," but it is clear to us from a separate definitional provision that McGinnis' claim package was not completed at the moment he sent a claim sheet to the facilitator. The agreement defines a "claim package" as "the materials sent to claimants who request them in connection with submitting a claim for relief . . . includ[ing] (i) a claim sheet and election form and a Track A Adjudication claim affidavit, . . . and (ii) associated documentation and instructions." J.A. 10 (Consent Decree ¶ 1(d)). As the District Court found, McGinnis "unambiguously" selected Track A at the time he submitted his claim sheet, election form, and Track A affidavit. *Pigford v. Vilsack*, 961 F. Supp. 2d at 84 n.2. But, as the above-quoted paragraph indicates, a claim sheet, election form and affidavit do not constitute the entirety of a "claim package"; it also includes any "associated documentation" a claimant chooses to submit.

A written agreement must be interpreted as a whole, with all words interpreted in the light of the circumstances. RESTATEMENT (SECOND) OF CONTRACTS § 202(1)-(2). Reading the Consent Decree in a manner that gives effect to all its provisions and attempts to render them consistent with one another, *see Segar*, 508 F.3d at 22, we think the meaning of "associated documentation" must include McGinnis' written instructions—submitted only days after he mailed his claim sheet—that he wished to change his selection to Track B.

A contract provision that is "reasonably susceptible of different constructions" is ambiguous, but a provision "is not ambiguous merely because the parties later disagree on its meaning." *Bennett Enters., Inc. v. Domino's Pizza, Inc.*, 45 F.3d 493, 497 (D.C. Cir. 1995). Here, the Court is faced with the former situation: there are two potential meanings of

"associated documentation." It could refer to documentation about the case that the facilitator was to mail to claimants. The Consent Decree states that the claim package consists of "materials sent to claimants who request them," suggesting that the parties might have expected the facilitator to mail potential claimants some "documentation and instructions" along with a blank claim sheet to fill in. We have examined the District Court docket, however, and no such materials were attached as an exhibit to the copy of the Consent Decree that the District Court approved. "[A]ssociated documentation" could also, however, refer to additional materials that claimants choose to submit as part of their claim. Notably, the Consent Decree only makes one other use of the word "documentation," and it supports this meaning. Paragraph 5 requires claimants to "complete the claim sheet and return it and any supporting documentation to the facilitator." J.A. 15 (Consent Decree ¶ 5(b)). The same paragraph separately instructs claimants to submit evidence that they had filed a discrimination claim with the Department, demonstrating that the term "associated documentation" was meant to include whatever other information supporting entitlement to relief a claimant might opt to communicate to the facilitator along with his claim sheet, election form, and affidavit. After determining the existence of ambiguity in a contract term, the Court must "determine what a reasonable person in the position of the parties would have thought the disputed language meant." *Armenian Assembly of Am., Inc. v. Cafesjian*, 758 F.3d 265, 278 (D.C. Cir. 2014). We find this latter meaning of "associated documentation" more plausibly corresponds to what a reasonable person in the parties' shoes would have understood, and we believe this supports the District Court's determination that the facilitator erred in transmitting McGinnis' claim to the adjudicator. *Pigford v. Vilsack*, 961 F. Supp. 2d at 91.

Under this reading of the Consent Decree, McGinnis' claim package did not become complete—and, therefore, his claim selection did not become "irrevocable and exclusive"—until the facilitator received his "associated documentation," that is, his express instructions asking that his claim be considered under Track B. In addition to being a reasonable interpretation of the parties' agreement, this result does nothing to displace the parties' expectation about the bargain they struck. McGinnis informed the facilitator in writing of his desire to proceed under Track B just a few days after he submitted his claim sheet. At this time, the facilitator had not yet transmitted McGinnis' claim sheet for resolution under either track, and McGinnis' now completed claim was still timely. At the time he "completed" his claim package by submitting the letter, then, the Department had no fixed expectation about the track on which McGinnis would proceed or his ability to recover. The adjudicator did not even determine McGinnis' claim in the first instance until nearly ten months later. J.A. 45.

For a class action settlement scheme—especially one with minimal court supervision—to work, its administrators must execute their tasks punctually and attentively. Thousands of claims have been filed in this case, and it may be that in many occasions "both the parties and the neutrals . . . expend[ed] every effort to see that [claims processing] move[d] as quickly and smoothly as possible." *Pigford v. Veneman*, 355 F. Supp. 2d 148, 160 (D.D.C. 2005) (denying motion to modify Consent Decree and to disqualify lead class counsel). Yet, in two instances in McGinnis' case, the facilitator's errors led to miscommunications that significantly delayed the proper resolution of his claim. As summarized above, McGinnis initially called and wrote to the facilitator in 1999 requesting that his claim proceed under Track B, after

submitting a claim sheet that manifested his indecision between the two tracks. He made this request before the 180-day cutoff for submitting claims mandated by the Consent Decree. *See* J.A. 16 (Consent Decree ¶ 5(d)). At this point, given the centrality of a claimant's choice of track to his ability to obtain relief and the amount of monetary damages available if he establishes his claim, the facilitator should have either informed McGinnis of its understanding that his initial choice of Track A was irrevocable, or honored his wishes and forwarded his claim package to the arbitrator. The facilitator did neither. Instead, it allowed McGinnis to think he had successfully switched to Track B, only to be surprised nearly a year later when he received an initial decision from the adjudicator. Once again, when the facilitator contacted class counsel Frantz in late 2007 and received an inscrutable reply as to whether McGinnis continued to seek Track B arbitration, it had the opportunity to demonstrate a modicum of capability in its role and follow up to confirm which track McGinnis wanted. For the second time, the facilitator failed. It pains us to contemplate that such a simple exercise of basic administrative competence could have prevented over a decade of delay and the need for judicial review at both the trial and appellate levels. Instead, fifteen years after he filed a claim, McGinnis has not yet had the opportunity to appear before the factfinder of his choice. We agree with the District Court that McGinnis has earned the remand of his claim to the arbitrator.

## IV.

For the foregoing reasons, we affirm the judgment of the District Court.

*So ordered.*