# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued December 16, 2019      Decided February 21, 2020

No. 19-5023

TIMOTHY C. PIGFORD, ET AL.,
APPELLEE

v.

SONNY PERDUE, SECRETARY, UNITED STATES DEPARTMENT
OF AGRICULTURE,
APPELLEE

MAURICE MCGINNIS, BY HIS CONSERVATOR DERRICK K.
JONES,
APPELLANT

———

Consolidated with 19-5027

———

Appeals from the United States District Court
for the District of Columbia
(No. 1:97-cv-01978)
(No. 1:98-cv-01693)

———

*John M. Shoreman* argued the cause and filed the briefs for
appellant.

*Casen B. Ross*, Attorney, U.S. Department of Justice, argued the cause for appellee Sonny Perdue. With him on the brief were *Jessie K. Liu*, U.S. Attorney, and *Charles W. Scarborough*, Attorney. *Jennifer L. Utrecht*, Attorney, entered an appearance.

Before: WILKINS, *Circuit Judge*, and WILLIAMS and SENTELLE, *Senior Circuit Judges*.

Opinion for the Court filed by *Senior Circuit Judge* SENTELLE.

SENTELLE, *Senior Circuit Judge*: Maurice G. McGinnis brought this action to claim damages under the Consent Decree created in the 1999 settlement between the Department of Agriculture and a class of African American farmers. The arbitrator responsible for adjudicating claims under the Consent Decree denied McGinnis's claim because he did not timely submit evidence of racial discrimination. McGinnis then petitioned the district court for "monitor review" of the arbitrator's decision. The district court denied that petition and McGinnis's two motions for reconsideration. Because we agree with the district court that such review would have been futile, we affirm the district court's holding. We also affirm the district court's decision declining to modify the Consent Decree under Federal Rule of Civil Procedure 60(b)(5).

**I.**

In 1997, three African American farmers, representing a putative class of 641 African American farmers, filed a class action lawsuit against the Department of Agriculture alleging racial discrimination in denying their applications for farm loans, credit and other benefit programs. *Pigford v. Glickman*, 185 F.R.D. 82, 86, 89 (D.D.C. 1999). The parties settled in

1999 and agreed to a Consent Decree that would "ensure that in the future all class members in their dealings with the USDA will 'receive full and fair treatment' that is 'the same as the treatment accorded to similarly situated white persons.'" *Id.* at 95 (quoting J.A. 292).

The Consent Decree established two tracks for class members to claim monetary damages: Track A and B. *Id.* On Track A, a class member must "demonstrate[] by substantial evidence that he was the victim of race discrimination." J.A. 303. The class member submits the required documentation and an adjudicator issues a decision. *Id.* at 303–06. If the adjudicator determines that the USDA discriminated against the class member, the adjudicator can "discharge all of the class member's outstanding debt to USDA" that was affected by discrimination and grant the class member a cash payment of $50,000. *Id.* at 304. Track A "provides those class members with little or no documentary evidence with a virtually automatic cash payment of $50,000, and forgiveness of debt owed to the USDA." *Pigford*, 185 F.R.D. at 95.

On Track B, class members have a higher evidentiary hurdle: they must demonstrate that they were discriminated against by a preponderance of the evidence. *Id.*; J.A. 308. Class members submit a "claim package" to an arbitrator who then schedules an evidentiary hearing. J.A. 306–07. The hearing can include witnesses and exhibits to prove discrimination. *Id.* at 307. Following the hearing, the arbitrator issues a decision and can award actual damages and discharge outstanding debt affected by discrimination. *Id.* at 308. Because the arbitrator can award actual damages, class members who pursue claims on Track B can receive much more than the $50,000 available on Track A, but the evidentiary standard required to show discrimination is higher.

The Consent Decree makes the adjudicator's decisions on Track A and the arbitrator's decisions on Track B "final." *Id.* at 306, 309. There is a narrow review provision that empowers a "monitor" to direct the arbitrator or adjudicator "to reexamine a claim where the Monitor determines that a clear and manifest error has occurred . . . and has resulted or is likely to result in a fundamental miscarriage of justice." *Id.* at 311. "Generally, the Monitor's review will be based only on the Petition for Monitor Review, any response thereto, the record that was before the Facilitator, Adjudicator or Arbitrator, and the decision that is the subject of the Petition for Monitor Review." *Id.* at 285. For Track B claims, "the Monitor will not be permitted to consider additional materials on review or to supplement the record for review upon reexamination." *Id.* at 286.

Maurice G. McGinnis is an African American farmer from Mississippi who sought but was denied farm credit from the Department of Agriculture. *Pigford v. Vilsack*, 777 F.3d 509, 510 (D.C. Cir. 2015). In 1999, he initiated a claim under the Consent Decree. *Id.* at 512. In an earlier phase of this litigation, "the persons responsible under the Consent Decree for processing his claim ignored or misinterpreted his clearly expressed wishes" to proceed under Track B. *Id.* at 510. There was extensive confusion between the claims facilitator, who processed class member claims, and McGinnis as to whether he was pursuing a claim under Track A or Track B. *Id.* at 512–13. The facts and circumstances of that phase of the litigation are more fully explained in *Pigford*, 777 F.3d at 512–13. McGinnis was represented by his privately retained attorney John M. Shoreman during part of that litigation. *Pigford v. Perdue*, 330 F. Supp. 3d 1, 4 (D.D.C. 2018). As relevant for this phase of the litigation, McGinnis was ultimately able to submit his claim under Track B, as he intended. *Pigford*, 777 F.3d at 510, 518.

On May 29, 2015, the arbitrator issued a formal hearing notice for McGinnis's Track B claim. *Pigford*, 330 F. Supp. 3d at 4. McGinnis was again represented by Shoreman. *Id.* Before the scheduled hearing, the parties jointly requested several stays of the proceeding while they discussed settlement. *Id.* at 5. The settlement negotiations stalled because McGinnis did not give Shoreman permission to disclose the expert report supporting his claim of racial discrimination. *Id.* Several times during December 2015, the parties and the arbitrator discussed McGinnis's reticence to disclose the expert report and Shoreman's efforts to convince his client to allow its release. *Id.* The arbitrator even offered to speak with McGinnis *ex parte* about releasing the report, and the government did not object, but it is not clear if that conversation ever took place. *Id.* Finally, on December 23, 2015, the arbitrator informed Shoreman and the government that he would give McGinnis until December 28, 2015, to release the report or he would restart the schedule for a Track B arbitration. *Id.* at 5–6. When the report was not released, the government proposed a schedule for the proceeding including deadlines for filing expert reports, direct testimony and legal memoranda, and for completing discovery and depositions. *Id.* at 6. The government also requested that, if McGinnis failed to meet the deadlines, "he would be 'precluded from offering any expert report, testimony, or other expert evidence in this case.'" *Id.*

On January 21, 2016, the arbitrator issued a formal hearing notice adopting the schedule proposed by the government and set the hearing for July 20, 2016. *Id.* "The arbitrator's formal revised hearing notice made clear: 'Should [McGinnis] fail to provide an expert report [on or before February 11, 2016,] he shall be precluded from offering any expert report, testimony, or other expert evidence related to economic damages.'" *Id.* (second alteration in original). McGinnis did not disclose his

expert's report or submit direct testimony, and neither he nor his counsel sought to depose the government expert or take discovery on the government's expert report. *Id.* On June 30, 2016, Shoreman filed an "unsigned economic damages report," "a package of miscellaneous documents that included a three-page letter from Mr. McGinnis himself," and other documents with handwritten annotations. *Id.* at 7. On July 5, 2016, the arbitrator excluded the damages report because it was not timely. *Id.* He determined, based on the rest of the documents filed at the same time, he would not hold a hearing. *Id.* On December 13, 2016, the arbitrator released his decision denying McGinnis damages because he "introduced no evidence in support of his claim" of discrimination. J.A. 277–78.

Approximately four months after the arbitrator's decision, in a state court proceeding, Derrick K. Jones was appointed as conservator on behalf of McGinnis. J.A. 262 n.1; *Pigford*, 330 F. Supp. 3d at 7. Jones is McGinnis's "nephew and long-time personal attorney." *Pigford*, 330 F. Supp. 3d at 14. Shortly after Jones was appointed, Shoreman filed a petition for monitor review of the arbitrator's decision, "purportedly on behalf of Derrick K. Jones." *Id.* at 7–8. The petition asserts that the arbitrator made a "clear and manifest error resulting in a fundamental miscarriage of justice" when it denied McGinnis's claim. *Id.* Specifically, the petition asserts that McGinnis's failure to meet deadlines for the arbitration process was attributable to his mental health conditions, which the petition asserted from the record were obvious to the participants in the process. *Id.* at 7–9.

The district court dismissed the petition for monitor review. *Id.* at 14. It first explained that monitor review would be futile because the monitor can direct a reexamination of the decision only when there is a clear error based on the evidence

in the record before the arbitrator. *Id.* at 11–12. Crucially, the new evidence introduced as part of McGinnis's competency proceeding was not before the arbitrator and, therefore, could not be considered during a reexamination. *Id.* Next, *sua sponte*, the district court considered, but ultimately rejected, modifying the Consent Decree under Federal Rule of Civil Procedure 60(b)(5). *Id.* at 12–14. In reaching that conclusion, the district court relied on Supreme Court precedent that a party is bound by the conduct of voluntarily chosen counsel. *Id.* at 13 (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs.*, 507 U.S. 380, 396–97 (1993); *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633–34 (1962)). The district court explained, "Because Mr. McGinnis has been represented by Mr. Shoreman in this matter since at least 2012, he is not entitled to a Rule 60(b)(5) modification for any failures or mistakes made by his retained counsel. Rather, he is bound by his agent's acts and omissions." *Id.* (internal citation omitted).

McGinnis filed a motion for reconsideration on June 28, 2018, but the district court denied the motion without prejudice on August 6, 2018, because Shoreman had not properly added Jones, the conservator, as a party to the case. J.A. 234. After the court granted Shoreman's motion to substitute Jones as a party, Shoreman filed a renewed motion for reconsideration on October 31, 2018. *Id.* at 234–35. The motion did not assert that there had been an intervening change in the law; instead, "using language almost identical to that found in the original petition," the petition argued that the court should reconsider its decision because it represented a "fundamental and manifest injustice." *Id.* at 236–37. The district court denied the renewed motion for reconsideration on January 2, 2019, because the motion merely retread the grounds in the original petition for monitor review. *Id.* at 237–40. McGinnis filed a timely notice of appeal on February 8, 2019, for both the dismissal of the

petition for monitor review and the denial of the renewed motion for reconsideration. *See* 28 U.S.C. § 1291.

## II.

The district court's decision to dismiss the petition for monitor review represents an assessment that McGinnis's arguments failed to demonstrate a colorable claim that the arbitrator committed a clear and manifest error. *See Pigford*, 330 F. Supp. 3d at 11–12. The district court undertakes a similar analysis in the context of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim: determining whether "[a] claim has facial plausibility." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As the district court was considering whether McGinnis had a claim under the Consent Decree and not interpreting said decree, we will review the district court's dismissal of McGinnis's petition for monitor review *de novo*, as we do for 12(b)(6) motions to dismiss. *Capitol Servs. Mgmt., Inc. v. Vesta Corp.*, 933 F.3d 784, 788 (D.C. Cir. 2019).

Next, we turn to McGinnis's Federal Rule of Civil Procedure 59(e) motion for renewed reconsideration. "A Rule 59(e) motion is discretionary and need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Ciralsky v. CIA*, 355 F.3d 661, 671 (D.C. Cir. 2004). We therefore review denials of motions for reconsideration for abuse of discretion, *id.*, unless, in considering the motion, the district court also reached the merits of a new argument or legal theory, *Dyson v. District of Columbia*, 710 F.3d 415, 420 (D.C. Cir. 2013). Because the district court did not address any new arguments, J.A 236–40, we review the district court's denial of the

renewed motion for reconsideration for abuse of discretion, *Ciralsky*, 355 F.3d at 671.

We also review the district court's denial of relief under Federal Rule of Civil Procedure 60(b)(5) for abuse of discretion. *Am. Council of the Blind v. Mnuchin*, 878 F.3d 360, 366 (D.C. Cir. 2017).

**A.**

We agree with the district court that monitor review would be futile because there was no evidence of McGinnis's incompetency in the record before the arbitrator. The record contained evidence of McGinnis's potential frustration and confusion with the process, including: McGinnis's refusal to allow his attorney to release the expert report, *Pigford*, 330 F. Supp. 3d at 5; the arbitrator's offer to speak to McGinnis to resolve his reluctance to release the report, *id.*; McGinnis's May 10, 2016 letter submitted to the arbitrator lamenting his treatment during the proceeding, J.A. 265–66; McGinnis's failure to comply with the deadlines established by the arbitrator, *Pigford*, 330 F. Supp. 3d at 6–7; and, finally, a reference in the arbitrator's decision that "McGinnis seriously misunderstood the nature of what he was required to do in the Track B process," J.A. 275. But, as the district court explained, these examples could indicate McGinnis's frustration or confusion with the process but do not raise an inference of mental incompetence. *Pigford*, 330 F. Supp. 3d at 12.

There is also no evidence that Shoreman raised the issue of McGinnis's potential incompetence before the arbitrator either by alerting the arbitrator or by moving to stay the case pending conservatorship proceedings in state court. Nor does Shoreman's briefing explain why he failed to take action to

protect his client's interests if he believed that competency was an issue.

The lack of evidence is crucial because the Consent Decree permits only a limited review. The monitor may instruct the arbitrator to reexamine the claim when there is a clear error in the record, but the evaluation of error is limited to what was in the record before the arbitrator. J.A. 285–86. These limitations mean that the monitor cannot consider the new evidence from medical evaluations of McGinnis and the competency proceeding. Instead, the monitor could rely only on the evidence of McGinnis's conduct during the proceeding, like the instances cited above. We agree with the arbitrator and the district court that McGinnis's actions could be interpreted as a product of irrationality or confusion or frustration but do not support an inference of incompetence. Thus, a monitor review would be futile.

**B.**

The district court did not abuse its discretion when it refused to modify the Consent Decree. *See Pigford*, 330 F. Supp. 3d at 12–14. As the district court explained, Rule 60(b)(5) permits relief from a "final judgment, order, or proceeding" if "applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5). "Modification [of a consent decree] is also appropriate when a decree proves to be unworkable because of unforeseen obstacles." *Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 384 (1992). One such unforeseen obstacle could be an attorney's failure to meet deadlines. This court has recognized the vital importance of competent representation for eligible farmers seeking damages pursuant to the Consent Decree. *Pigford v. Veneman*, 292 F.3d 918, 925–27 (D.C. Cir. 2002). In fact, we modified the deadlines in the Consent Decree when the class counsel failed

to meet them. *Id.* at 925–26. But, importantly, in that decision, the presumption that clients are bound by the mistakes of their "voluntarily chose[n]" attorney, *Link*, 370 U.S. at 633, was rebutted because the class counsel was appointed by the district court, *Veneman*, 292 F.3d at 926. Because McGinnis voluntarily chose his attorney, the presumption is not rebutted on that ground. He is therefore bound by his attorney's failure to submit documents and memoranda by the arbitrator-imposed deadlines. As a result, the district court did not abuse its discretion when it declined to modify the Consent Decree because Shoreman did not meet the arbitration deadlines.

McGinnis's failure or inability to cooperate with his attorney may be another unforeseen obstacle. But the district court did not abuse its discretion in declining to modify the Consent Decree because McGinnis's alleged incompetence made it impossible for him to cooperate with or supervise his attorney. The district court reasonably explained that modification was not warranted for two reasons. First, Shoreman never raised the issue of competency in the record. *Pigford*, 330 F. Supp. 3d at 13–14. Second, modifying the Consent Decree would lead to "a mini-trial on a matter ancillary to the merits of this case"—namely Shoreman's "options for advancing [McGinnis's] interests independent of [his] relative competence." *Id.* at 14. The district court further noted that "any grievance Mr. McGinnis may have with his counsel would be more properly resolved in a separate malpractice action." *Id.* In sum, the district court provided a reasoned and reasonable explanation for its decision not to modify the consent decree.

## III.

For the foregoing reasons, we affirm the district court's denial of the petition for monitor review and the denial of the motion for reconsideration.