

NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>LESLIE KLEIN,<br><br>     Debtor. | BAP No. CC-25-1042-SFL<br><br>Bk. No. 2:23-bk-10990-SK |
| LESLIE KLEIN, as Trustee of the Marital Deduction Trust of Erika Klein and Trustee of the Credit Trust of Erika Klein, and not individually,<br><br>     Appellant,<br>v.<br>BRADLEY D. SHARP, Chapter 11 Trustee,<br><br>     Appellee. | **MEMORANDUM***|

Appeal from the United States Bankruptcy Court
for the Central District of California
Sandra R. Klein, Bankruptcy Judge, Presiding

Before: SPRAKER, FARIS, and LAFFERTY, Bankruptcy Judges.

## INTRODUCTION

Bradley D. Sharp, as chapter 11[1] trustee in debtor Leslie Klein's

---

 * This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

 [1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532.

bankruptcy, moved to sell Debtor's interest in real property located in Israel. Klein, in his capacity as trustee of two subtrusts of his family trust, objected to the sale on the basis that the subtrusts allegedly owned the Israeli property rather than the bankruptcy estate. The bankruptcy court found that Klein owned the Israeli property personally and approved the sale to a third party.

Klein, as trustee of the subtrusts, appeals from the order authorizing the sale. However, he conceded at oral argument before this Panel that the sale has been consummated, the sale cannot be unwound, and the only live issue on appeal concerns who is entitled to the sale proceeds. Klein asserts that the bankruptcy court should have found that the subtrusts owned the Israeli property, so they are entitled to the net sale proceeds. According to Klein, he produced several ledger pages showing that the subtrusts owned the Israeli property. In addition, he asserted that since the filing of his bankruptcy, the subtrusts have paid a monthly maintenance fee arising from the property.

The bankruptcy court found that neither the ledger pages nor Klein's maintenance fee assertion established that the subtrusts owned the property. It explained that there was no evidence that the subject subtrusts were created. Nor was there any evidence of the conveyance of any property to these trusts. Furthermore, the court determined that all of Klein's trusts were self-settled and hence all trust property would be property of the bankruptcy estate in any event. Finally, the court

2

recognized that the property was registered in Israel under Klein's name individually.

Klein has failed to address the bankruptcy court's decision, much less explain why it was erroneous. Because Klein has failed to show that the court's ownership finding was clearly erroneous, we AFFIRM.

## FACTS[2]

This is not Klein's first appeal from the bankruptcy court's judgments and orders. Our recent decision in *Klein v. Sharp (In re Klein)*, 2025 WL 1591289 (9th Cir. BAP June 5, 2025), describes in greater detail Klein's trusts, Klein's bankruptcy case, and related adversary proceedings.

## A.    Klein's family trust.

As indicated in our prior decision, Klein and his then-wife Erika[3] first formed a family trust in 1975. The operative version of this trust is the Second Amended Klein Living Trust dated April 8, 1990 ("Klein Trust"). The very first sentence of the Klein Trust referenced "the attached schedule" as identifying the assets of the "Trust Estate." The only schedule attached to the Klein Trust listed two parcels of Los Angeles real property: (1) a parcel on Laurel Avenue; and (2) a parcel on June Street. No other

---

[2] We exercise our discretion, when appropriate, to take judicial notice of documents electronically filed in the underlying bankruptcy case and the related adversary proceeding. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

[3] She is since deceased. For ease of reference, we refer to her by her first name. No disrespect is intended.

provision of the Klein Trust specifically identified any other or different assets as property of the trust estate. The Klein Trust designated Klein and Erika as co-trustees and beneficiaries and gave them broad discretion over both management and distribution of the trust's assets.

Upon the death of either Klein or Erika, the Klein Trust provided for the division of the trust's assets between three subtrusts: (i) the Surviving Spouse's Trust; (ii) the Marital Deduction Trust; and (iii) the Credit Trust. The Klein Trust indicates that funding of the Marital Deduction Trust and the Credit Trust was not automatic upon the passing of a spouse but instead required the trustee actively to transfer trust assets.

When Erika passed in 2012, the Surviving Spouse's Trust was to receive Klein's entire share of the community property held in trust. In turn, the latter two subtrusts were each to receive a portion of Erika's share of the community property held in trust. However, there is no evidence that any transfers were made to fund these subtrusts. As the surviving spouse, the Klein Trust designated Klein to serve as the sole trustee of any subtrust actually formed. He also was named to be the sole beneficiary of the Surviving Spouse's Trust and the Marital Deduction Trust, and a joint beneficiary of the Credit Trust—along with the couple's children.

Additionally, the Klein Trust included a spendthrift clause, which purported to prohibit or restrict the ability of any creditor to reach any trust assets to satisfy any claims of the creditor against any of the trust's beneficiaries.

**B.    Klein's bankruptcy, his schedules, and the June Street property adversary proceeding.**

Klein commenced his bankruptcy in February 2023. Between March 2023 and December 2024, he filed several different versions of his Schedule A/B listing his real and personal property. In relevant part, he claimed to hold an interest in Suite 1323 in the Leonardo Plaza Hotel in Jerusalem ("Suite 1323"), which he identified as a "vacation home." In his original schedules, his first amended schedules, and his second amended schedules—all filed in the spring of 2023—he indicated that Suite 1323 was held 50% by debtor and 50% by Erika's irrevocable trust.

In May 2023, Sharp was appointed to serve as chapter 11 trustee. Roughly one year later, Sharp filed a quiet title adversary proceeding against Klein, the Klein Trust, the Marital Deduction Trust, and others, seeking to determine ownership of the June Street property. Whereas Sharp claimed that the June Street property was property of Klein's bankruptcy estate, Klein claimed that it was owned by one or more of the subtrusts.[4] According to Klein, multiple ledger pages dated for consecutive years between 2013 and 2023 all supported the subtrusts' ownership claims. Though both sides referenced the ledger pages in their subsequent summary judgment papers, no one ever presented any testimony to

---

[4] As stated in more detail in *In re Klein*, 2025 WL 1591289, at *3-4, Klein's claims regarding which of the subtrusts owned the June Street property evolved over time. The specifics of those claims make no difference for purposes of this appeal.

explain when the ledger pages were created, who prepared them, for what purpose, or the basis for the ledger pages' content. Furthermore, the ledger pages themselves were inconsistent on their face. Each ledger page was broken down into sections, with each section listing assets supposedly belonging to a different trust. Without offering any explanation, the assets each trust allegedly held sometimes varied from page to page.

In December 2024, the bankruptcy court granted Sharp's motion for summary judgment. The court acknowledged that the Klein Trust was the owner of record of the June Street property. Nonetheless, it held that there was "no evidence" that the Klein Trust ever transferred the June Street property to any of the subtrusts. As the court observed, "[t]he ledgers are unrecorded, are separate from the living trust. They're not attached to that document, nor are they mentioned in it. And they do not contain any evidence of a transfer." Nor was any evidence presented that any of the subtrusts ever were formed or funded.

In the alternative, the court held that all of Klein's trusts, including the subtrusts, qualified as "self-settled trusts" controlled by Klein. As the court explained, the Klein Trust's spendthrift clause therefore was invalid, and hence the June Street property still qualified as property of Klein's bankruptcy estate. Klein appealed from the court's grant of summary judgment, but this Panel affirmed. *In re Klein*, 2025 WL 1591289, at *13.[5]

---

[5] Shortly before the summary judgment hearing in the June Street property adversary proceeding, Klein filed his third amended schedules. In this version, he

6

## C. Sharp's motion to sell Suite 1323.

In January 2025—roughly a month after the summary judgment ruling in the June Street property adversary proceeding—Sharp moved to sell Suite 1323 under § 363(b). As stated in the sale motion, Sharp previously had commenced a proceeding in Israel for recognition of Klein's California bankruptcy case as a foreign main proceeding under Israeli insolvency law. The Israeli court granted Sharp's request for relief and appointed an Israeli trustee to administer Klein's Israeli assets. Thereafter, the Israeli court authorized the sale of Suite 1323 to third parties for roughly $920,138.40, following published solicitation and a competitive bidding process. Klein did not appear in Israel to contest the Israeli court's approval of the sale. Sharp estimated that the sale would yield roughly $833,768 for the estate in net sale proceeds, before U.S. taxes.[6]

Sharp's California sale motion acknowledged that in Klein's 2023 schedules, he had listed Suite 1323 as 50% owned by him and 50% owned by the Marital Deduction Trust. However, Sharp believed that Klein was the sole owner of Suite 1323 based on the title registry for the property dated December 9, 2024, as maintained by the "Jerusalem Title Registry

---

alleged for the first time that his interests in both the June Street property and Suite 1323 were limited to a life estate. But Klein's third amended schedules did not identify who allegedly owned the remainder interest in Suite 1323.

[6] While Sharp expressed the belief that the Israeli court's authorization was sufficient to support the sale, he explained that he filed his sale motion in the California bankruptcy court out of an abundance of caution. He further maintained that if Klein objected to the sale, he should have opposed the sale in the Israeli court.

Bureau in the Ministry of Justice's Land Registry and Settlement of Rights Administration." The Israeli title registry identified Klein as the owner (leaseholder) of record of Suite 1323. It also clarified that Klein's property interest arose from a lease with a term of 999 years.

On behalf of the Marital Deduction Trust and the Credit Trust, Klein opposed the sale, arguing that the subtrusts owned the beneficial interest in Suite 1323. Yet, Klein did not question the authenticity of the Israeli land registry for Suite 1323 and conceded that it identified him as owner. Still, he insisted that he owned Suite 1323 in his representative capacity for the benefit of the two subtrusts, rather than in his individual capacity. To support this proposition, Klein relied on the same ledger pages the bankruptcy court found to be not probative for purposes of determining ownership of the June Street property. He further claimed that since February 2023, the subtrusts had paid a total of roughly $120,000 in "maintenance fees" for Suite 1323 and that Sharp had not pointed to any expenses the estate paid for the property.[7] According to Klein, the subtrusts' payment of these expenses somehow evidenced their beneficial interest in Suite 1323.

In his reply, Sharp pointed out that the bankruptcy court recently ruled that the June Street property was property of Klein's bankruptcy

---

[7] The monthly maintenance fee payments allegedly made by the subtrusts coincided with Klein's bankruptcy. Yet, Klein has presented no documentation to corroborate his payment claims, or to show who actually made the payments, from which accounts, or in what capacity.

estate because there was no evidence that the subtrusts ever were formed. Nor was there any evidence that any property ever was transferred into the subtrusts. And the bankruptcy court found that each of the trusts were self-settled, rendering any trust assets property of the estate. Sharp argued that these findings applied equally to Suite 1323 and likewise established that it was property of the estate.

**D.    The sale motion hearing and the bankruptcy court's ruling.**

At the February 12, 2025 sale motion hearing, the court granted Sharp's motion. The court found that Klein personally owned Suite 1323. The court noted that its analysis in its prior ruling in the June Street property adversary proceeding applied equally to the trusts' claim of ownership of Suite 1323. Specifically, "there was no evidence that the [Marital Deduction Trust] or the [Credit Trust] had been created, let alone funded with any assets." The court also pointed to its holding that any property in the Klein Trust or subtrusts qualified as property of Klein's bankruptcy estate because all such trusts were self-settled trusts. The court thus held that Suite 1323 was property of the estate and that Sharp could sell it under § 363(b). According to the court, its ownership finding regarding Suite 1323 was bolstered by the "Israeli Title Registry [which] listed only Klein's name" as owner.

On February 13, 2025, the bankruptcy court entered its order granting Sharp's sale motion. Among other things, the order identified the buyers as good faith purchasers entitled to the protections provided in § 363(m).

9

Klein timely appealed on behalf of the Marital Deduction Trust and the Credit Trust.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157. We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Whether the bankruptcy court abused its discretion when it granted Sharp's sale motion.

## STANDARD OF REVIEW

We review for an abuse of discretion the bankruptcy court's order granting a motion to sell property under § 363(b). *Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC)*, 391 B.R. 25, 32 (9th Cir. BAP 2008). The bankruptcy court abused its discretion if it applied an incorrect legal rule or its factual findings were illogical, implausible, or without support in the record. *TrafficSchool.com v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011).

## DISCUSSION

Section 363(b)(1) provides that a "trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, **property of the estate** . . . ." (Emphasis added.) It therefore is axiomatic that § 363(b)(1) permits a bankruptcy estate to sell only property of the estate. *See Warnick v. Yassian (In re Rodeo Canon Dev. Corp.)*, 362 F.3d 603, 608 (9th Cir. 2004) ("Section 363 authorizes the trustee to sell only property of the estate." (citing *Connolly v. Nuthatch Hill Assocs. (In re Manning)*, 831 F.2d

10

205, 207 (10th Cir. 1987)), *opinion withdrawn and superseded*, 126 F. App'x 353 (9th Cir. Mar. 8, 2005), *as amended on denial of reh'g* (Apr. 1, 2005).

Klein asserts that the bankruptcy court erred in granting the sale motion because the Marital Deduction Trust and Credit Trust own Suite 1323 rather than him personally. At the same time, Klein does not seek to unwind the sale, which he has conceded already occurred. Instead, his sole argument on appeal concerns how Sharp should distribute the net sale proceeds. According to Klein, because the Marital Deduction Trust and Credit Trust held the beneficial interest in Suite 1323, the net sale proceeds should be distributed to those trusts.[8]

Klein contends that his ownership argument was substantiated by: (1) the ledger pages previously produced in the June Street property adversary proceeding, and (2) the bankruptcy estate's failure to pay the monthly postpetition maintenance fees for Suite 1323. We address each of these items of evidence in turn.

## A.    The ledgers.

Klein primarily relies on the ledger pages attached to his opposition

---

[8] The bankruptcy court found that the sale to the purchasers was in good faith under § 363(m), and it has now closed. But because Klein's appeal concerns the distribution of the sale proceeds rather than seeking to unwind the sale itself, this appeal is not moot. *See Paulman v. Gateway Venture Partners III, L.P. (In re Filtercorp, Inc.)* 163 F.3d 570, 576-78 (9th Cir. 1998); *see also Roach v. Marshack (In re Roach)*, 2019 WL 408628, at *3 & n.2 (9th Cir. BAP Jan. 29, 2019) (holding that portion of appeals concerning sale approval was moot but portion of appeals concerning distribution of sale proceeds was not moot).

to the motion to sell. His accompanying declaration merely stated, "[a]ttached hereto as Exhibit 2 is a true and correct copy of a series of ledgers which shows the Leonardo Plaza Hotel Suite 1323 in the Marital Deduction Trust and Credit Trust." As was the case in the June Street property adversary proceeding, Klein provided no further explanation, foundation, or authentication of the ledger pages. Nor is there any substantive discussion of the ledger pages.

In its sale motion ruling, the bankruptcy court found the ledger pages no more probative of property ownership than it had in the June Street property adversary proceeding. Klein provided no evidence as to who prepared these ledgers, when they were prepared, for what purpose, or how the underlying information was obtained. Nor did Klein attempt to reconcile the various internal inconsistencies in the contents of the ledger pages concerning which trust allegedly owned which assets.

**B.      Postpetition payment of maintenance fees.**

Klein also relies on the statement from his declaration, in which he claimed that in and after February 2023, his trusts paid approximately $120,000 in expenses related to Suite 1323. Again, there is no corroboration or specificity as to the expenses allegedly paid. Klein merely points out that the estate did not pay such expenses. This is wholly beside the point. In his Schedule J, Klein stated under oath that his **personal** monthly expenses included $2,500 per month for Suite 1323. This statement regarding his personal expenses remains uncontroverted.

According to Klein's own statements, his trusts only began making these payments after he filed bankruptcy. There was no evidence presented suggesting that any of the trusts paid any prepetition expenses for Suite 1323. Rather, Klein's Schedule J is evidence that he was personally obligated to make—and made—prepetition payments of $2,500 per month for Suite 1323. Klein's personal obligation for Suite 1323's expenses is consistent with his personal ownership of Suite 1323, which became property of his bankruptcy estate when he filed bankruptcy. Moreover, to the extent that the trusts actually paid postpetition some of the expenses for Suite 1323, Klein fails to explain how these payments demonstrate the trusts' ownership of the property.

**C. Klein failed to address the evidence relied on by the bankruptcy court to support its determination that Suite 1323 was property of the bankruptcy estate.**

In response to Klein's opposition to the motion to sell, Sharp relied in part on the bankruptcy court's recent decision holding that the June Street property was property of the bankruptcy estate because there was no evidence that the subtrusts had been created or that any property had been conveyed to the subtrusts. Additionally, Sharp argued that the court's determination in the same decision that all of the trusts were self-settled was equally applicable to the question of ownership of Suite 1323.

The bankruptcy court agreed with Sharp. In its oral ruling on the sale motion, the court stated:

Similar to Klein's argument regarding the Israeli property, Klein contended that based on the living trust, the June Street property was owned by [the Marital Deduction Trust] and/or the [Credit Trust]. The Court thoroughly analyzed Klein's argument, the ledgers and the evidence presented by both sides and found there was no evidence that the [Marital Deduction Trust] or the [Credit Trust] had been created, let alone funded with any assets.

The bankruptcy court thus concluded: "The Court did not find Klein's arguments regarding ownership of the June Street property persuasive. For the same reasons, the Court does not find Klein's argument regarding ownership of [Suite 1323] persuasive and it finds that Klein is the sole owner of the property at issue here."

Finally, the court recognized that title to Suite 1323 was registered in Israel in Klein's name personally. There was nothing on title to indicate trust ownership or that Klein owned the property in a representative capacity. According to the court, the Israeli title records "bolstered" its finding that Klein personally owned the property.

In sum, Sharp presented sufficient evidence demonstrating that Klein owned Suite 1323 individually. On appeal, Klein has failed to state why the bankruptcy court's reliance on this evidence and on its prior rulings in the June Street property adversary proceeding was error. Klein provided no information to establish the ledger pages as reliable, substantive evidence of ownership. Nor did he ever explain when the ledger pages were created, who prepared them, or for what purpose. He thus failed to present any competent, credible evidence to support his assertion that the subtrusts

14

were the beneficial owners of Suite 1323.

Moreover, the bankruptcy court additionally held that even if the subtrusts owned Suite 1323, it still would be property of the bankruptcy estate because the subtrusts were self-settled trusts. This holding is consistent with California law, which provides that property held in a self-settled trust remains property of the settlor/trustee/beneficiary. *See Cutter v. Seror (In re Cutter)*, 398 B.R. 6, 20-21 (9th Cir. BAP 2008), *aff'd*, 468 F. App'x 657 (9th Cir. 2011); *In re Salkin*, 526 B.R. 31, 34 (Bankr. C.D. Cal. 2015). Klein has not challenged this holding in this appeal. When as here the appellant fails specifically and distinctly to make an argument in his appeal brief, we typically consider the argument forfeited. *See, e.g.*, *Kurtin v. Ehrenberg (In re Elieff)*, 637 B.R. 612, 621 n.7 (9th Cir. BAP 2022) (citing *Christian Legal Soc'y v. Wu*, 626 F.3d 483, 487–88 (9th Cir. 2010)), *aff'd*, 2023 WL 2203564 (9th Cir. Feb. 24, 2023).

At bottom, Klein has not established that the bankruptcy court abused its discretion in approving the sale of Suite 1323 or that it clearly erred when it found that Klein owned the property. A finding is clearly erroneous only when it is illogical, implausible, or unsupported by the record. *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010). Here, the record supported the bankruptcy court's ownership finding. On this basis, the bankruptcy court's approval of the sale was not an abuse of discretion.

## CONCLUSION

For the reasons set forth above, we AFFIRM the bankruptcy court's order granting Sharp's motion to sell.[9]

---

[9] Klein additionally argues that the Marital Deduction Trust and the Credit Trust should be reimbursed from the net sale proceeds for all amounts they allegedly paid postpetition for expenses associated with Suite 1323. If the subtrusts have documentation to corroborate Klein's postpetition expense claims, then they may be able to assert an administrative expense claim against the estate, assuming that the time to do so has not expired. That question, however, is beyond the scope of this appeal.